In re the MARRIAGE OF Dale R. COOPER and Mary A. Cooper.

Upon the Petition of Dale R. COOPER, Appellee and Cross-Appellant,

And Concerning Mary A. COOPER, Appellant and Cross-Appellee.

No. 55958.

Supreme Court of Iowa.

Feb. 19, 1975.

J. C. Brekken of Brekken & Deppe, Story City, for appellant and cross-appellee.

M. D. Seiser of Pasley, Singer, Seiser & Pasley, Ames, for appellee and cross-appellant.

Heard before MOORE, C. J., and MASON, REES, UHLENHOPP and REYNOLDSON, JJ.

MASON, Justice.

Mary A. Cooper, respondent-wife, appeals and Dale R. Cooper, petitioner-husband, cross-appeals from that portion of the trial court's decree in a dissolution of marriage proceedings dealing with the division of the

assets of the parties. The issue presented for review is whether the property division, alimony and child support provisions of the decree are just.

The parties were married March 4, 1945, in Des Moines. Four children, three daughters and one son, were born of this marriage. The youngest, Cynthia Ann, was still living at home at the time of the dissolution hearing.

At the time of their marriage, Dale and Mary had little or nothing in the way of assets. Through the diligent work of both, the parties had acquired assets which the court valued at $270,000.00 free and clear of indebtedness. Among these assets are included two grain elevators (Cooper's Mill and Ericson Elevator), two homes, a farm, a Pontiac LeMans automobile, stocks and bonds, cash savings, and various furniture and fixtures.

Dale and Mary have known each other since the third grade. After their marriage both worked various jobs. Several homes were owned and later sold to make other purchases. In 1956, they sold their home at a $10,000 profit in order to purchase what is now Cooper's Mill. Much of the interior work on this home was done by Mary. At this time they purchased an old home in Ames on which the parties did substantial work. In 1961 the Ericson Elevator was purchased.

In 1960 the parties built a $46,000 home in Timberline Heights in Ames, which Mary apparently still occupies.

The two eldest daughters of the parties had received college educations costing approximately $12,000 each. At trial Dale testified he felt a moral obligation to invest $12,000 on the educations of each of his two remaining children, or, if they chose not to attend college, to pay them each this amount.

For a short period of time Mary sold real estate in the Ames area, a business which Dale entered on a part-time basis. She made up to $5,000 in one year. Mary voluntarily terminated this employment in November 1969.

In any event, the marriage relationship broke down to the extent the parties have been separated since October 1967.

After their separation, the parties purchased what is known as the Jacobson farm in which Mary invested $4,000. Mary testified she has received no income from this farm.

Mary testified that as a result of bearing the four children she has varicose veins which at one time were stripped but returned during her fourth pregnancy. She also stated she had arthritis of the spine and that a doctor informed her of a potential for diabetes.

The trial court awarded Mary the Ames residence occupied by her, all stocks and bonds except as to Cooper's Mill, household items, the automobile encumbered with a $1,200 debt, all cash in Mary's name, an $11,000 interest in the farm, subject to an option to purchase on the part of Dale, alimony of $200 per month and $150 child support per month until the parties' minor daughter reaches majority. Dale was also ordered to pay all real estate taxes and $2500 for Mary's attorney fees. The trial court retained jurisdiction over the question of Cynthia Ann's college education. Dale received Cooper's Mill, the Ericson Elevator, his residence in Ames, certain life insurance policies and the farm machinery. He was ordered to pay all debts except the $1200 owed on Mary's car and was enjoined from selling the elevators without Mary's permission or a renewal of the mortgage at the Union Story Trust and Savings Bank.

I. Dale and Mary dispute the valuation placed upon the two grain elevators located in Ames. The elevator known as Cooper's Mill is an old and outdated building located in the center of Ames. A witness for Dale's case stated the land might be worth more without the elevator structure than with it.

As to the Ericson Elevator, this witness testified the building was "way too small." Dale valued Cooper's Mill at $174,000 which

includes assets and liabilities and the Ericson Elevator at a negative $70,000. Dale offered to pay his wife or her appraisers $70,000 to take the Ericson Elevator off his hands if they would assume the liabilities thereon and the mortgage on Cooper's Mill.

Mary's two appraisal witnesses agreed the fair valuation of Cooper's Mill to be $235,325.73 and of the Ericson Elevator to be $60,428.63. The latter evaluation was based on the elevator's "self-admitted depreciation schedule" and there was no on-the-scene inspection.

Dale points out the figure arrived at by the trial court appears to be the median between the two contended evaluations. However, his argument seems to be that the $270,000 evaluation was for the mills only, which is not the case. This figure included all the parties' assets minus indebtedness. Due to the extent of assets in addition to the elevators, one could infer the trial court valued the elevators close to what Dale did. However, there is no breakdown of the value of each asset.

As this is an equity case, review is de novo. "Review of a decree granting dissolution of marriage, determining property rights and ordering alimony payments is de novo. It is our duty to examine the whole record and adjudicate rights anew on those propositions properly presented, provided issue has been raised and error, if any, is preserved in the course of the trial proceedings; while we give weight to the findings of the trial court, we will not abdicate our function as trier de novo on appeal. * * * [citing authority]." In re Marriage of Novak, 220 N.W.2d 592, 597 (Iowa 1974).

The trial court found there was $57,200 indebtedness on the parties' assets and concluded the net value after these debts to be $270,000. This included the grain elevators, two homes, one of which that had cost $46,000 to $47,000 to build some ten years earlier, a farm, some storage bin property, and the cash value of life insurance policies, plus other less substantial items.

The facts disclose Mary contributed heavily in the acquisition of these assets in addition to her duties as a wife and mother. When not working at various jobs, she performed labor on the couples' several houses and worked with her husband on their business enterprises.

Dale complains his wife received most of the liquid assets whereas he received two debt ridden, obsolete grain elevators requiring several thousand dollars of modernization work. Although not required by the decree, Dale feels he must expend $24,000 on the college educations of his two remaining children, even though it appears from the appendix the parties' son, nineteen years old at the time of the hearing, did not intend to go on to college. On the other hand, Dale's income is shown to be substantial. On cross-examination Dale admitted that on income tax returns for Cooper's Mill for the years 1966 through 1970 he had reported on the average a combination of salary paid to him and retained earnings in excess of $31,000.

From the property division it appears the only assets easily transferable from Dale to Mary would be certain life insurance policies which have a total maturity value of $96,000. Otherwise, Dale would have to give up interests in the elevators or his residence.

As indicated, the valuation placed on the two elevators by Mrs. Cooper's witnesses is considerably higher than the valuation placed on these properties by Mr. Cooper. However, on appeal she does not question the valuations as determined by the trial court. She complains the award of the parties' assets made to her was inequitable in view of the time and effort expended by her during the marriage in the acquisition of these assets. She insists under the circumstances shown she should have been awarded one-half of the assets.

In written brief and argument both parties place a valuation of $90,000 on the assets awarded Mary. Their ideas in this

respect are undoubtedly based on this statement appearing in the court's findings of fact: "The Court has attempted to set off approximately one-third of the net worth of the parties to the respondent by way of property division. In addition, provision is made for what the Court believes is a fair and reasonable payment of alimony and child support."

Section 598.17, The Code, provides that when the court is satisfied from the evidence that there has been a breakdown of the marital relationship to the extent the legitimate objects of matrimony have been destroyed and there remains no reasonable likelihood the marriage can be preserved the court shall, based upon competent and relevant evidence, in such decree provide for the division of the assets of the parties and reasonable support or maintenance of any dependent children or either spouse. In re Marriage of Novak, 220 N.W.2d at 596.

Section 598.21 provides in part:

"Alimony—custody of children—changes. When a dissolution of marriage is decreed, the court may make such order in relation to the children, property, parties, and the maintenance of the parties as shall be justified."

■ Counsel in argument refer to prior decisions of this court where the award approved for the wife in a certain factual situation amounted to 40 percent of the marital property. In others, they assert the award to her was close to an equal division. In still other cases they analyze the opinion as providing for a 25 to 75 percent division. In some factual situations a just award may amount to a one-third share while in others a just award may call for what amounts to an equal division. Although some of our cases may be subject to the analysis as made by counsel here we point out neither section 598.17 nor 598.21 sanctions a division of the assets of the parties in a dissolution proceedings based on either a one-third share to the wife or an equal division as might be the case in descent and distribution situations. The question is always what is an equitable and just award in a given set of circumstances.

■ A distribution of the assets of the parties in a dissolution proceedings should be based on the guidelines set out in Schantz v. Schantz, 163 N.W.2d 398, 405 (Iowa 1968), excluding consideration of reward or punishment on the basis of fault. In re Marriage of Winter, 223 N.W.2d 165, 169 (Iowa 1974).

In his cross-appeal Mr. Cooper asserts the division of property and alimony awarded to Mrs. Cooper was inequitable considering the extent and nature of the property involved. He maintains the court erred in concluding the net worth of the assets of the parties was $270,000 and urges this court to reduce the net value to $230,000. This contention arises principally from his disagreement with the valuation placed on the two elevators. Of course, neither his opinion or that of his experts on the valuation of these two elevators is conclusive on the trier of fact (in the first instance the trial court and now on a de novo review this court). Cooper maintains the award to Mary should be reduced to the sum of $75,-000.

■ Although alimony on one hand and allocation of property rights on the other are distinguishable and have different purposes in marriage dissolution proceedings, they are still closely related in the matter of determining the amount to be allowed. *Novak*, 220 N.W.2d at 597. See also *Winter*, 223 N.W.2d at 169; In re Marriage of Zoellner, 219 N.W.2d 517, 524 (Iowa 1974); and In re Marriage of Tucker, 213 N.W.2d 498, 501 (Iowa 1973).

■ Thus, the question boils down to whether the property division and alimony taken together are equitable to both Dale and Mary.

In applying the guidelines suggested in *Schantz* in our de novo review, it is found Dale and Mary remained together some

twenty-two years before separation, are presently in their forties, both are apparently in reasonably good physical condition for their ages and both worked diligently in furtherance of the family economic position. At the time of the hearing, 14-year-old Cynthia Ann was living with Mary.

Mary herself has some experience in the real estate field and could probably earn some money on her own at least during the hours Cynthia Ann is in school. However, Mary would probably need any income she brings in to be supplemented in order to maintain the style of life to which she and her daughter are accustomed. As stated, Dale seems to be earning a good income.

From our de novo review we find no reason which would justify disturbing the court's decree as to the award of the specific assets made to Mrs. Cooper and that portion of the decree is affirmed. The same is true as to the provision made for support payments required of Mr. Cooper for Cynthia Ann.

■ As mentioned, the trial court in its decree awarded Mrs. Cooper judgment against Mr. Cooper for alimony in the sum of $200 per month payable on the first day of every month beginning November 1, 1972.

It is the opinion of this court that on remand the designation of the $200 monthly payments required of Dale R. Cooper to Mrs. Cooper as "alimony" should be stricken and the decree so amended as to specify that the monthly payments of $200 constitute a portion of a property settlement made in connection with a just and equitable division of the property of the parties. See Knipfer v. Knipfer, 259 Iowa 347, 351–354, 144 N.W.2d 140, 142–144.

The decree as thus modified should require that the payments of $200 per month should continue during the lifetime of Mary A. Cooper irrespective of her remarriage if such should occur. The decree should further provide that in the event Dale R. Cooper should predecease Mary A. Cooper the monthly payments of $200 accruing after his death as well as any payments due and unpaid at that time should constitute a valid and enforceable claim against Dale R. Cooper's estate. See In re Estate of Roberts, 257 Iowa 1, 131 N.W.2d 458.

■ The decree as modified should include an order directing Dale R. Cooper to pay $12,000 toward the college education of Paul Kevin Cooper in the event he decides to attend college. However, if Paul Kevin decides against attending college Dale R. Cooper shall be directed to financially assist him to the extent of $12,000.

The decree as modified shall also order Dale R. Cooper to pay the sum of $12,000 toward the education of Cynthia Ann in the event she decides to attend college. Should Cynthia Ann decide against attending college Dale R. Cooper shall be directed to financially assist her to the extent of $12,000.

The two foregoing provisions requiring payments on behalf of Paul Kevin and Cynthia Ann are not based on section 598.1, The Code. See In re Marriage of Briggs, Iowa, 225 N.W.2d 911, filed this date. Rather they are ordered in connection with a determination of a just division of the property and in view of Mr. Cooper's expressed willingness to assume such obligation.

■ On remand the trial court shall determine the manner of the payment of the amounts required of Cooper under this provision and the manner of securing the same.

Respondent filed application for allowance for attorney fees and costs in connection with this appeal.

Her counsel was allowed $2500 for services rendered in the trial court. They have advanced $59.04 for printing briefs and arguments and $320 for a transcript of the trial court proceedings. These expenses will be taxed as costs by the trial court and no further allowance will be made in this court for these items. In addition, counsel have advanced $181.47 for out-of-pocket expenses.

Respondent should be paid an additional allowance of $1000 toward her attorney fees plus $181.47 for money advanced by them. Judgment shall be entered in the trial court for such amounts.

The matter is therefore

Affirmed on petitioner's cross-appeal and affirmed as modified on respondent's appeal and remanded with directions.