In re the MARRIAGE OF Donna J. CALLENIUS and Ronald W. Callenius.

Upon the Petition of Donna J. Callenius, Appellant, and Concerning Ronald W. Callenius, Appellee.

No. 64389.

Supreme Court of Iowa.

Aug. 26, 1981.

Charles T. Patterson of Gleysteen, Harper, Eidsmoe, Heidman & Redmond, Sioux City, for appellant.

Maurice B. Nieland of Kindig, Beebe, Rawlings, Nieland & Killinger, Sioux City, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McGIVERIN, LARSON, and SCHULTZ, JJ.

SCHULTZ, Justice.

This appeal involves a dispute over the child-custody and economic provisions of a dissolution decree. The trial court awarded alimony, child support, a lump-sum property settlement of $225,000 to be paid at a future date, and custody of the parties' three children to the appellant, Donna J. Callenius. The court of appeals affirmed the award of custody, modified the property settlement by substituting in lieu thereof two eighty-acre tracts of farmland, and remanded the matters of alimony and child support to the trial court for a hearing to determine whether Donna waived the right to challenge these awards by accepting benefits under the provisions of the dissolution decree while this appeal was pending. We vacate the decision of the court of appeals and affirm the judgment of the trial court.

Donna and Ronald W. Callenius, the appellee, were married on January 26, 1964. At the commencement of trial, on September 27, 1979, they had been married approximately sixteen years. Donna was forty-two years old and Ronald was forty-four. They had three children, Ronda, Todd, and Cory, whose respective ages were fifteen, twelve, and seven.

Prior to the marriage, Donna graduated from a junior college with an associate degree in secretarial training. She worked as a secretary for several years. She was employed as a legal secretary for a law firm in South Dakota for two years immediately preceding the marriage. After the marriage Donna was employed by a tax firm for two months. Thereafter she became a full-time housewife.

Donna brought few assets into the marriage. She had an eight-year-old, partially paid for Chevrolet automobile, clothing, and other personal property.

Donna did not assist in any of the duties, and was not involved in any of the decision making, concerning Ronald's farming operation. The trial court found that she had "substantial if not exclusive responsibility for child rearing over the years, duties that she has performed faithfully and credibly." The record substantiates this finding.

In 1978 Donna worked fifteen hours per week for a life insurance agent. After the separation of the parties, she moved to South Dakota and worked for a law firm for $575 per month. She indicated that she could not work and take care of the children, however, and her employment was terminated. Donna was unemployed at the time of trial. She is in good health.

Ronald was raised on a farm near Sheldon. After a tour of duty with the United States Navy, he worked as a diesel mechanic, carpenter, at a feed mill, and for a furniture distributing company in North

Carolina. Ronald returned to Iowa and commenced farming in 1958. Ronald estimated his net worth to be from $30,000 to $40,000 at the time of the marriage. He was renting approximately 600 acres and had a livestock operation.

The livestock and farming operation prospered from 1964 to 1970. At one time this farming operation consisted of nearly 1000 acres of rented land. In 1967 he and a partner purchased 320 acres of land in Minnesota, which they farmed for five years. The land was sold at a good profit. From the proceeds, Ronald purchased an eighty-acre tract of land near Sheldon in 1971 for $625 an acre. This became the homestead. Substantial improvements were made to the property, including remodeling the house.

At one time during the period between 1970 and 1975 Ronald farmed 1100 acres, had a cow/calf operation, fed cattle, and raised hogs. In October 1975 he purchased a ten-acre tract with extensive livestock feeding facilities. This land was purchased on a contract for $160,000. The contract contained an option to purchase adjoining property for $1500 per acre. In 1978 the option was exercised for an additional 377 acres, also acquired on contract. The home eighty was mortgaged for $100,000 in 1979. All of the land was acquired in joint tenancy between Ronald and Donna.

In 1978 3849 head of hogs and 907 head of cattle were sold. Ronald did custom work, such as commercial silage work and combining. Prior to trial he operated a road grader part-time. He suffers from narcolepsy, but this has not prevented him from leading an active life.

Ronald testified that Donna did not want anything to do with the farming operation. He testified that she had no interest in the financial affairs of the farm and did not wish to be involved in them. He indicated she would not run errands or transport him to different areas on the farm and confined her activities to the house and lawn. She did not have a garden the last eight years of their marriage. Ronald worked extremely long hours six days a week. He spent little time with his family.

Despite Ronald's hard work and the sophisticated farm operation, his tax returns show a $13,778 net loss for the years 1974 through 1978. He did have a net gain of over $38,000 in 1978; however, this barely offset a net loss of nearly $35,000 in 1977. During this period of time approximately $20,000 per year depreciation was taken, which allowed for a greater cash flow than the net loss indicates.

Although the net operating income was bleak, the increase in value of the farm property caused the net worth of the parties to soar. We have reviewed the evidence de novo and adopt the trial court's finding of fact as to the value of property:

> The parties have accumulated substantial property as owners and operators of a sophisticated farming and livestock operation. The Court finds that the total net worth of the farm operations of the parties, including real estate, growing and harvested crops, farm machinery, livestock, and other personal property relating to farming operations, is in the sum of $900,000. Two-thirds of such net worth, however, is represented by the interest of the parties as vendees in two real estate contracts for the purchase of 387 acres of farmland. These contracts, if timely paid and performed, will be completed in October, 1985 and May, 1993.

The mortgage and land contracts call for substantial payments. The mortgage on the home eighty is $98,000. A $10,686 principal and interest payment was due in 1980. The ten-acre tract purchased for $160,000 required a down payment of $10,000 and a $30,000 payment the following March 1, leaving a balance due of $120,000. Interest on this balance is 7½%, and annual payments are required of not less than $8000 or more than $40,000 with the final balance due in 1986. According to the record, a principal and interest payment of $14,600 was due in 1980.

The 377-acre tract was purchased for $566,100 with a $57,000 down payment, leaving a balance due of $509,100 at 9%

interest. The contract calls for annual payments of $33,940 plus interest. The payment of principal plus interest due in 1980 was $75,177.

The total amount of principal and interest on the mortgage and installment contracts for 1980 was thus slightly over $100,-000. Real estate taxes and insurance on the land and buildings total more than $5000. The amount of interest will decrease each year with the payment of principal. The ten-acre tract will be paid for by 1986. However, the 377-acre tract will not be paid for until 1993, and the contract prohibits prepayment. In September of 1979 Ronald was served with two notices of forfeiture of the real estate contracts for nonpayment of approximately $24,000 interest. Ronald avoided forfeiture by paying the interest due, however.

The trial court awarded the real estate, farm machinery, and livestock to Ronald and awarded Donna $225,000 as her equitable share of the marital property. This sum is to be paid in installments of $25,000 on January 1, 1986, $25,000 on January 1, 1987, and $175,000 on January 1, 1988. Interest on principal was ordered to be paid at the rate of 5% per annum payable on January 1 of each year beginning in 1980. Interest is to be paid at the rate of 9% on any delinquent installments. Ronald is to pay all of the encumbrances on the real property, and the trial court imposed an equitable lien on the real property to secure the performance of Ronald's obligations under the decree. Each party was awarded the personal property in their possession and ordered to pay any encumbrances thereon.

The trial court awarded Donna $300 per month alimony until the later of February 1, 1988, or Ronald's full performance of the property-settlement provisions of the decree. The court also awarded $100 per month child support per child until the child attains the age of eighteen years, becomes married, or becomes emancipated, whichever occurs first. The court reserved the right to enter further support orders to provide for post-high-school education.

Ronald was awarded the dependency exemptions for the children for income tax purposes. To claim the exemption, however, he cannot be delinquent on the child-support obligation. Ronald was also ordered to pay the reasonable cost of medical and dental care for the children to the extent that such expenses exceed $150 per child per year. If Ronald becomes delinquent on his obligations under the property settlement, alimony, or child-support provisions of the decree, however, he must pay all of the children's medical and dental expenses.

The trial court ordered Ronald to pay Donna $7500 toward legal fees and other legal expenses. The court of appeals ordered Ronald to pay Donna $3500 toward legal fees incurred on appeal and assessed Ronald for the costs of the appeal.

Ronald does not challenge the trial court's award of custody to Donna. We have reviewed the award and find that it was properly made.

I. *Statements outside the record.* In their briefs and during oral argument both parties stated facts not contained in the record. "[A]s a court of review we must ordinarily limit our consideration to the record made at trial or in supplementary proceedings upon limited remand." *In re Marriage of Moffatt*, 279 N.W.2d 15, 19 (Iowa 1979). Accordingly, in our de novo review we have not considered the many extra-record facts advanced by the parties.

II. *Property division and alimony.* Neither party is satisfied with the trial court's division of the property and the award of alimony. Ronald is also dissatisfied with the changes rendered by the court of appeals in the division of property. We will consider the award of alimony and the division of property as they relate to each other.

Although alimony on one hand and allocation of property rights on the other are distinguishable and have different purposes in marriage dissolution proceedings, they are still closely related in the matter of determining the amount to be allowed.

Thus, the question boils down to whether the property division and alimony taken together are equitable to both. . . .

*In re Marriage of Cooper*, 225 N.W.2d 915, 919 (Iowa 1975) (citations omitted).

Turning first to the property award, we find some agreement; however, it is limited to the accuracy of the record on valuation. Both parties concede the trial court's finding of valuation was made on the record. The trial court found the net worth of the parties to be $900,000 and that two-thirds of such net worth is represented by the parties as vendees in two real estate contracts for the purchase of 387 acres of farmland. Ronald claims that this valuation is high, however, and the record would have sustained a determination of a net worth of $502,340.

On appeal the real issue is whether the property should have been divided or sold, as Donna claims, or whether she should have received a property settlement of $35,000 to $45,000 as her share of the home eighty and the sum of $100,000 contingent upon when and if Ronald is able to complete the payments or refinance the contracts on the 387 acres, which Ronald contends would be equitable.

Donna challenges the property division of the trial court and claims that it was unfair to use the present value of the real estate to arrive at a future award, especially when an allowance was made of interest at the rate of 5% when the legal rate on a judgment is 7%. She maintains that the present value should have been discounted because of the deferred award. She argues that a more equitable result would be obtained by selling all the property and making an equitable distribution, or, in the alternative, by dividing the real estate and awarding her 160 acres.

Ronald maintains that a sale of the property would be inequitable and contrary to the best interests of the parties. He maintains that a forced sale would result in severe and substantial income tax and legal

consequences, with the possibility of forfeiture of the contract on the 377-acre tract because the contract provides that it is not assignable. At the very least, he maintains, it would subject the parties to more years of burdensome and expensive litigation. He claims that his efforts in the farming operation resulted in the financial condition of the parties on the date of the dissolution decree. He also contends that the 377-acre tract must be paid off in fifteen annual installments. With his obligation of support, alimony, and interest under the decree, plus the installment contract obligations, he maintains that it is necessary that he have the entire farm to meet such payments or to refinance.

■ The distribution of assets of the parties in a dissolution proceeding must be based on the guidelines set out in *Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968), excluding fault, *In re Marriage of Williams*, 199 N.W.2d 339, 345 (Iowa 1972).[1] In addition, the property division and alimony provisions of a dissolution decree must be equitable to both parties. *In re Marriage of Cooper*, 225 N.W.2d at 919. In *Cooper* we rejected rules based on percentage division of the assets of the parties and stated: "The question is always what is an equitable and just award in a given set of circumstances." *Id.*

■ Our de novo review of the evidence causes us to conclude that the property division of the trial court, when considered with the alimony award, is correct. After pointing out that two-thirds of the net worth of the parties was represented by the real estate contracts that will be completed in 1985 and 1993, the trial court stated:

Energetic farming practices will be required to perform the contracts. There is some risk that the contracts cannot be performed despite the best efforts of respondent. It is equitable to order a property division in a manner which recognizes the risk of forfeiture and the considerable efforts which must be expended

---

1. Section 598.21, The Code 1981, enacted in 1980 and therefore inapplicable in the present case, provides statutory criteria for property division.

by respondent in avoidance of same. Accordingly, the Court finds that petitioner is entitled to receive the sum of $225,000 as her equitable share of the net worth of the parties at the time of trial, together with interest on such sum at 5% per annum....

We have previously recognized the reasonableness of a trial court awarding a farm to the spouse who operated it and in fixing the awards and schedule of payments to the other spouse without reaching equality so the farmer-spouse might retain ownership of the farm. *In re Marriage of Andersen*, 243 N.W.2d 562, 564 (Iowa 1976); *see In re Marriage of Briggs*, 225 N.W.2d 911, 913 (Iowa 1975); *cf. In re Marriage of Conley*, 284 N.W.2d 220, 223 (Iowa 1979) (farm held as investment by veterinarian and his wife was subject to equal division). Here, as in *Andersen* and *Briggs*, the principal asset of the parties is farmland, which was the source of the family's livelihood and wealth. Not only was farming Ronald's vocation, but he brought into the marriage considerable farm assets and was the exclusive operator and manager of the farm business. We do not discount Donna's contribution as a housewife and parent, however.

Further consideration must be given to the fragile financial situation that surrounds the two real estate contracts. The contract for the ten-acre tract limits the amount of prepayment that may be made, and the contract for the 377-acre tract prohibits prepayment. The amounts of the payments are substantial, at the present time almost $90,000 annually. The variance between contract sale price and present value and the forfeiture attempt by the vendor give ample warning of things that may happen without care, planning, and adequate cash. Forfeiture would decimate the assets of the parties. We believe the trial court was correct in taking into consideration the risk of forfeiture and the considerable effort that must be expended by Ronald.

Donna argues that the trial court improperly considered the nonassignment and forfeiture clauses, as they affect the transferability of the real estate. She refers to the previously quoted statements by the court regarding the risk of forfeiture. The trial court did not mention the assignment clause and we interpret the trial court's reference to risk of forfeiture to refer to performance of the installment payments. Although we do not rely on the problem of assignability in arriving at our decision, it may be a source of litigation if transfer is attempted. We find no merit in this contention.

We also find no merit in Donna's claim that the trial court assigned a present value to a future award. The award of $225,000 is a present award to be paid at a future time with interest.

We likewise find no merit in Donna's claim that the 5% interest rate is illegal. In *Briggs* we held that failure to allow interest on deferred annual payments was considered by the trial court and was a factor in fixing the amount awarded. 225 N.W.2d at 913. Donna's reliance on *In re Marriage of Conley*, 284 N.W.2d at 223–24, in which we modified a decree that did not provide for interest payments and allowed the legal rate of 7%, is misplaced. In *Conley* we were achieving an equitable property division by the amount of interest. Here, as in *Briggs*, Ronald's burden during the next several years will not be an easy one if he is to pay off the existing indebtedness and contribute to the support of Donna and the children.

Awarding the home eighty acres and another eighty acres to Donna would take away from Ronald an important source of income and his only obvious source of refinancing. It would sever a farming unit embraced in one contract of sale and provide additional problems if one party defaulted on the contract. Forced sale of the property also raises questions concerning income tax liabilities. Furthermore, it would have serious effects on Ronald's ability to farm on his present scale.

We now consider the alimony provisions in relation to the property division. We find the determination made by the trial court to be fair and equitable.

The trial court correctly pointed out that Ronald's earning capacity was superior to Donna's. She had been out of the work

force for sixteen years and apparently her skills have diminished. We believe the trial court correctly tied in the property settlement with the alimony provision. With her earning capacity, she should be able to live comfortably on $300 alimony per month and the accrued interest each year of $11,250. Although she will not have the present use of the property awarded to her under the property settlement, she will have an annual income of $14,850 under the decree. If she desires, she may supplement this by employment outside of the home.

Ronald complains bitterly, however, that the alimony is excessive in relation to his earning capacity as shown by his last five tax returns, which show net losses. We find no merit in this contention. The evidence is clear that he has the opportunity to make substantial income from the farm or his other known abilities.

We hold that the trial court's division of property and award of alimony were correct.

■ III. *Child support.* Donna contends the award of child support is inadequate. She points out that the attorney for the children recommended $250 per month per child, which was the amount that had been set by another district judge as temporary child support. We agree that the award of $100 per month per child is modest. Donna does not argue that the evidence indicates a greater need, however.

The trial court undoubtedly considered the money Donna would receive from alimony and accrued interest on the property settlement. *See In re Marriage of McFarland*, 239 N.W.2d 175, 179 (Iowa 1976). Her financial statement filed June 2, 1979, in support of her application for allowances showed a monthly need of $935 plus an installment payment on the purchase of an automobile of $140. The annual accrued interest on the property settlement is $11,-250, which, combined with the alimony, will provide over $1200 per month in funds available to Donna. The award is equitable, in light of all of the circumstances, under the factors outlined in *In re Marriage of Zoellner*, 219 N.W.2d 517, 525 (Iowa 1974).

■ IV. *Attorney fees.* Neither party was satisfied with the trial court's award to Donna of $7500 for attorney fees. Donna had incurred attorney fees of over $16,000 at the time trial commenced. Neither party has attacked the court of appeals determination affirming the trial court award and ordering Ronald to pay $3500 of Donna's attorney fees on appeal.

We have reviewed this matter and believe that the trial court properly considered the entire economic situation of the parties. We decline to change the trial court's award. Ronald is also ordered to pay $3500 of Donna's attorney fees on appeal and all of the costs of this appeal.

The decision of the court of appeals is vacated. The decree of the trial court is affirmed, and the case is remanded for an order in compliance with our determination of additional attorney fees and costs.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT AFFIRMED; REMANDED FOR ENTRY OF ORDER.