**IN THE COURT OF APPEALS OF IOWA**

No. 13-0364
Filed June 25, 2014

**IN RE THE MARRIAGE OF ANGELA WHITEHURST**
**AND KEVIN WHITEHURST**

**Upon the Petition of**
**ANGELA WHITEHURST,**
    Petitioner-Appellee,

**And Concerning**
**KEVIN WHITEHURST,**
    Respondent-Appellant.

_____

    Appeal from the Iowa District Court for Polk County, Robert A. Hutchison,

Judge.


    Kevin Whitehurst appeals the decree dissolving his marriage to Angela

Whitehurst.  **AFFIRMED AS MODIFIED.**


    Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant.

    Kodi Brotherson of Babich Goldman, P.C., Des Moines, for appellee.


    Heard by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**BOWER, J.**

Kevin Whitehurst appeals the decree dissolving his marriage to Angela Whitehurst. Kevin claims the distribution of debt, assets, and the award of spousal support was not equitable. He also claims he should not be required to maintain a life insurance policy sufficient to pay his spousal support obligation and the district court abused its discretion in awarding Angela attorney and expert witness fees. We find, because of the disproportionate financial standing of the parties, the distribution of assets and debts is equitable. However, we reduce the amount of spousal support, preserving the level necessary to allow Angela to maintain a reasonable standard of living and obtain training to reenter the workforce. Additionally, because of Kevin's actions during the separation to maximize debt and dispose of assets in violation of previous court orders, a life insurance policy is necessary to ensure Angela receives her spousal support. Finally, we determine, because of the property distribution and spousal support, Kevin should be responsible for $15,000 of Angela's attorney fees and $5000 in expert witness fees. We affirm as modified.

**I.      Background Facts and Proceedings**

The seventeen-and-one-half-year marriage of Kevin and Angela Whitehurst was dissolved in January 2013. The parties were married in Texas in 1995. The parties lived briefly in Colorado before moving to Iowa in 2000. At the time of the marriage, Angela was a full-time flight attendant earning approximately $20,000 a year. She left her employment in 1997, one year shy of obtaining company health and retirement benefits.

Kevin has one child from a previous relationship, who is no longer a minor. Since leaving her employment, Angela has been a full-time mother and homemaker. She had very limited employment during the marriage, including working as a waitress, housekeeper, and receptionist.

When the parties moved to Colorado, Kevin entered an apprenticeship program to become a lineman for an electric company. They later moved to Iowa and Kevin briefly left the apprenticeship program before re-enrolling. Kevin is now employed as a lineman living in Johnston. Kevin routinely works more than fifty hours per week and travels regularly, with little advance notice, across the country due to natural disasters and other emergencies. The work, particularly when traveling, is stressful and dangerous. For this, Kevin is well-compensated. The parties agree he earns, on average, between $160,000 and $180,000 a year. In 2012, because of weather-related employment, Kevin earned $230,684. Due to the travel requirements of his job, Angela contributed substantially to his earning capacity during the marriage by caring for Kevin's child and the home. Kevin was essentially always on call and may have been required to travel on very short notice. It was not unusual for Angela to receive a telephone call from Kevin advising her to get his travel items ready so he could leave later that day or the following day.

The parties disagree on their standard of living and lifestyle during the marriage. Kevin claims they enjoyed a very modest standard of living, with a house in need of repairs, a significant amount of credit card debt, one used car, and vacations paid for by credit cards or family members. He also points out the

parties own few assets despite his high salary. Angela portrays a very different lifestyle. She claims they were able to eat out twice a week at nice restaurants, she drove a Mercedes, and they owned a houseboat and a fishing boat. She also points out they took several recent vacations[1].

The district court awarded Angela the marital home, with the responsibility to pay the mortgage. The home is worth approximately $128,000, with a $93,000 encumbrance. She was also ordered to pay an additional $10,000 debt associated with the home, and the debt on her vehicle.[2] Angela was ordered to pay the balance on four credit cards, a portion of which was to be offset by a $7500 payment from Kevin as some of the debt was incurred for marital expenses during the separation. Kevin was also ordered to pay the debt on three credit cards he was using, and pay the dental bills incurred by the parties.[3] The decree required Kevin to assume a greater debt load than Angela. The parties were ordered to split Kevin's 2012 bonus, vested stock shares[4], and non-vested stock shares according to a future payment schedule. They were also ordered to equally divide Kevin's National Electrical Annuity Plan and National

---

[1] These vacations included trips to Greece, Las Vegas, Florida, Mexico, Washington, and two cruises.

[2] Kevin does not have vehicle expenses because his employer provides him with transportation and pays for all maintenance, fuel, and other expenses.

[3] The dental bill is one source of considerable disagreement. Angela incurred a $4000 dental bill that was to be paid using a "benny" card provided by Kevin's employer. A dispute arose between the parties about the card, and Kevin requested a new card from the benefit provider, effectively discontinuing the card in Angela's possession. When she attempted to use the card and found it had been deactivated, she was forced to pay the bill out of pocket. The district court ordered Kevin to pay the bill, either with the "benny" card, or in cash.

[4] Kevin is awarded stock as a bonus each year as an incentive to maintain employment.

Electrical Benefit Fund pension plan. Kevin was awarded an additional pension plan to the exclusion of Angela.

The decree establishes a spousal support schedule for Angela. She was awarded $3800 a month in traditional spousal support for a period of thirty-six months, plus an additional $1500 per month in rehabilitative alimony for the first twenty-nine months. Starting with the thirty-seventh month, Kevin's obligation is reduced to $3000 a month for an additional sixty months. All spousal support terminates upon Angela's death or remarriage. Kevin was also required to obtain and maintain a life insurance policy, with Angela as the beneficiary, to ensure the spousal support obligation is satisfied.

## II.     Standard of Review

As an equitable proceeding, we review a decree of dissolution de novo. Iowa R. App. P. 6.907. Though we are not bound by the findings of the district court, we will give them weight. *In re Marriage of Sjulin*, 431 N.W.2d 773, 776 (Iowa 1988). We will not disturb the district court's award of attorney fees absent an abuse of discretion. *In re Marriage of Rosenfeld*, 668 N.W.2d 840, 849 (Iowa 2003).

## III.     Discussion

### A.     Distribution of Assets and Debts

Kevin claims the district court's distribution of assets and debts was not equitable. Specifically, he complains he was assigned a greater amount of debt than Angela, and Angela did not contribute to his 2012 bonus or the non-vested stock and accordingly she should not share in them.

In the decree the district court is to divide the property of the parties equitably. Iowa Code § 598.21(5) (2011). Section 598.21(5) provides a list of factors the court is to consider when dividing the assets and debts of the parties. Factors the district court must consider include the length of the marriage, the contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services, the contribution by one party to the other's training and education, and the earning capacity of each individual including "employment skills, work experience, length of absence from the job market . . . and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage." Iowa Code §598.21(5)(a), (c), (e), (f). What is equitable depends upon the unique circumstances of each case. *In re Marriage of Callenius*, 309 N.W.2d 510, 515 (Iowa 1981). Though equality is most often equitable, it is not required. *In re Marriage of Keener*, 728 N.W.2d 188, 193 (Iowa 2007).

The assignment of debts in this decree is not equal, with Kevin ordered to make a direct payment to Angela for debts incurred during their separation. Despite the inequality, however, we find the distribution to be equitable. Kevin requested responsibility for the Bank of America, American Express Blue, and Citi Bank credit cards. The total amount due on those cards is $25,403. He also requested responsibility for his dental bill of $2658. Angela was assigned responsibility for two Capital One credit cards with a balance of approximately $7500, all of which was incurred after the parties' separation. She was also

assigned responsibility for her Bank of America credit card, with a balance of $5754, and her Chase credit card, with a balance of $5732. The total due on Angela's cards is $18,986. Because of his greater earning capacity, Kevin was ordered to make a $7500 payment to Angela as much of the credit card debt was incurred for the family during their separation. After the payment, Angela will remain responsible for $11,486 in credit card debt. Angela's present earning capacity is low due to her years out of the workforce, limited education, and work history. The disparity is also justified by Kevin's conduct after the couple separated. The district court found a $25,000 discrepancy in Kevin's reported finances, and Kevin admits he violated the asset preservation order on multiple occasions. The court also found Kevin deliberately maintained the level of debt on his credit cards at the time of separation rather than continuing to pay down the balances. This conduct made Angela's financial situation significantly worse, reducing her ability to pay a greater share of the debt.[5]

Section 598.21(5)(i) contemplates the equitable distribution of both vested and unvested future benefits. Kevin claims Angela did not contribute to his "non-vested" stocks or his 2012 cash bonus. Both were acquired during the marriage and are marital assets which must be distributed. Angela did not save anything for retirement or earn a pension due to her role during the marriage. Sharing in the benefits of Kevin's employment is proper.

---

[5] Kevin also claims he should not be responsible for the dental bills. We disagree. Angela's $4000 bill should have been paid by Kevin's "benny" card, and was left to her through his deliberate actions. His dental bill is his own to satisfy.

### B. Spousal Support

Kevin was ordered to provide Angela with spousal support. Adding traditional and rehabilitative spousal support together, he is to pay $5300 a month for the first twenty-nine months, $3800 a month for the following seven months, and $3000 a month for an additional sixty months. He claims the district court award was excessive in its amount and duration.

Spousal support is awarded as a replacement for the other spouse's obligation for financial support. *In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). The amount of the award depends upon the circumstances of the individual case, and there is no absolute right to spousal support of any kind. *Id.* The award must be considered along with the property distribution, as both impact the spouse's capacity for self-sufficiency. *In re Marriage of Debler*, 459 N.W.2d 267, 268 (Iowa 1990). We give considerable latitude to the district court's determination of spousal support so long as the court has based its decision on the criteria in section 598.21A. *See Anliker*, 694 N.W.2d at 540.

Our supreme court has recognized three kinds of spousal support, two of which are applicable to this case. Traditional spousal support is payable for as long as the spouse is incapable of self-support. *Id.* Rehabilitative spousal support is a payment for a period of time so the spouse can re-educate or retrain and prepare to be self-sufficient. *Id.* at 541.

Substantial awards of spousal support have been approved where the parties were married for a significant period of time, one spouse was unskilled, and the other spouse had significantly greater earning capacity. *See Debler*, 459

N.W.2d at 269–270. The spouse receiving spousal support is expected to earn up to their capacity, and we will allow for less spousal support where that capacity is not being realized. *See In re Marriage of Wegner*, 434 N.W.2d 397, 399 (Iowa 1988).

The spousal support awards in this case are considerable. Several factors found in section 598.21A are appropriate for consideration. The parties were married for seventeen and a half years, and both contributed significantly to the marriage, including Angela's efforts to take care of the home and raise Kevin's child from the time he was two and a half years of age. Angela performed those important tasks while Kevin increased his training and earning capacity. Angela believes she can obtain training that will allow her to be self-sufficient, although not necessarily at a comparable standard of living enjoyed during the marriage. There is no evidence she is unable to work at the present time. Kevin was assigned the majority of marital debt, and his ability to pay spousal support will therefore be impacted. Additionally, Kevin's ability to pay spousal support will also be impacted by health insurance payments and mandatory union dues.[6] Upon a review of the record, we find the traditional spousal support payment should be reduced to $3000 per month for the first thirty-six months, plus $1500 per month in rehabilitative spousal support. Kevin's obligation shall then be reduced to $3000 per month for sixty months.

---

[6] Kevin claims he pays a minimum of $6800 a year in mandatory union dues, which impacts the amount of money he has available to satisfy other obligations, such as spousal support. His health insurance payments and union dues were not mentioned as a consideration by the district court.

### C.     Insurance Policy

The district court ordered Kevin to purchase an insurance policy guaranteeing payment of spousal support in the event of his death.   Angela claims she was previously listed as the beneficiary of a $450,000 life insurance policy but was replaced by Kevin in violation of the asset preservation order.  She further claims Kevin can easily comply with this portion of the decree by again naming her as the beneficiary.

In identical language, our supreme court interpreted the successor to Iowa Code section 598.21A(1), which permits alimony payments after death.   *See Debler*, 459 N.W.2d at 270.  This can be accomplished by listing the spouse as the beneficiary of an insurance policy.  *Id.*  We find, in light of Kevin's history of ignoring court orders, such as the asset preservation order, and the district court's finding he manipulated his debt load to Angela's detriment; the insurance policy requirement is an equitable way to ensure Angela receives the support ordered.

### D.     Attorney Fees

Kevin claims the district court's award of $25,000 in attorney fees and $5000 in expert witness fees to Angela was an abuse of discretion.

Attorney fees are not allowable as a matter of right, but depend upon the financial condition of the parties and their relative abilities to pay.  *See In re Marriage of Wilcoxson*, 250 N.W.2d 425, 427 (Iowa 1977).  Considering the property award and the substantial spousal support obligation ordered, we find the district court abused its discretion in ordering the high amount of fees as

punishment for Kevin's trial strategy. Angela will have some ability to pay her fees and Kevin has been ordered to satisfy a high level of debt and pay spousal support. We find Kevin should be ordered to pay $15,000 towards Angela's attorney fees and expert witness fees in the amount of $5000.

Angela requests appellate attorney fees. "[O]ur decision is guided by the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). Based upon the outcome of the appeal, we order each party to pay their own appellate attorney fees.

## IV.    Conclusion

We find the property distribution is equitable because of Angela's present earning capacity and Kevin's conduct in maintaining as much debt as possible after their separation. We modify the decree to reduce the spousal support award to a total of $4500 per month for a period of thirty-six months. Kevin shall then pay $3000 a month for sixty additional months. We find the insurance requirement in the decree is equitable and justified. Finally, we modify the award of attorney fees. Kevin shall pay $15,000 of Angela's attorney fees and $5000 in expert witness fees. The costs of this action are assessed equally.

**AFFIRMED AS MODIFIED.**