# IN THE COURT OF APPEALS OF IOWA

No. 20-0267
Filed July 22, 2020

**IN THE INTEREST OF T.H., H.H., and J.H.,**
**Minor Children,**

**C.H., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Lee (North) County, Ty Rogers, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Alicia M. Stuekerjuergen of Stuekerjuergen Law Firm, PLC, West Point, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Justin Stonerook, Burlington, attorney and guardian ad litem for minor children.

Considered by Doyle, P.J., Schumacher, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**GAMBLE, Senior Judge.**

A father appeals the termination of his parental rights to his three children, T.H., H.H., and J.H.[1] On appeal, he (1) challenges the permanency goal, (2) claims the State failed to provide reasonable efforts toward reunification, (3) challenges the statutory grounds authorizing termination, (4) argues termination is not in the children's best interests, (5) claims the juvenile court should have applied various permissive statutory exceptions to preclude termination, and (6) asserts his due process rights were violated. We affirm.

**I. Statement of the Facts**

In 2015, this family first came to the attention of the Iowa Department of Human Services (DHS) when H.H. was found at a convenience store looking for food. DHS learned the family was living in a commercial building and H.H. and T.H. would beg for food from the building's tenants.

---

[1] The father is the biological and legal father to H.H. and J.H. He is the legal father to T.H. T.H.'s biological father's parental rights were not terminated. The mother's parental rights were also terminated; she does not appeal.

We recognize under *In re J.C.*, the father would not be an essential party to the termination proceeding with respect to T.H. because he is not T.H.'s biological father or adoptive father. *See* 857 N.W.2d 495, 505–06 (Iowa 2014). However, *J.C.* relied on the narrow definition of "parent" in Iowa Code section 232.2(39) (2013). In 2016, the legislature amended the definition of "parent" within chapter 232 to also include:

> a father whose paternity has been established by operation of law due to the individual's marriage to the mother at the time of conception, birth, or at any time during the period between conception and birth of the child, by order of a court of competent jurisdiction, or by administrative order when authorized by state law.

2016 Iowa Acts ch. 1087, § 1. The father fits this expanded definition of "parent." The juvenile court properly treated the father as an essential party to the termination proceedings with respect to T.H. and terminated the father's parental rights to T.H.

Following eviction from the commercial building, the family moved in with extended family. That home was dirty, as were the children. H.H. told DHS workers she could not remember the last time her parents provided her with food, she reported she got her food from the local convenience store instead. H.H. also stated her parents only put water in J.H.'s bottle, and J.H. appeared significantly underdeveloped for his age.

The juvenile court removed the children from the parents' care and adjudicated them as children in need of assistance. Following removal, the parents tested positive for methamphetamine and amphetamines.

But the parents made progress by finding a stable home, remaining sober for a period of time, and developing some parenting skills. So the children were returned to the home but remained adjudicated as children in need of assistance.[2]

By January 2018, the children's guardian ad litem (GAL) became concerned about the children's hygiene and living conditions. The GAL provided the juvenile court with photos of the home showing its hazardous condition. Following a hearing, the juvenile court again removed the children from the home.

In July, H.H. described the father as "on the run." When the father did attend visitations, he was inconsistent in his conduct. He was disheveled and unable to form coherent sentences at a visit and required his mother's and cousin's assistance to supervise the children. Then at a visit the next day, he ignored the children and told his mother "no" when she directed him to supervise and interact with the children. However, he did well during a visit with the children in September

---

[2] H.H. returned to the home first in August 2016. T.H. and J.H. were returned to the home roughly six months later in February 2017.

and received positive feedback from the family safety, risk, and permanency (FSRP) service provider who supervised visitations. But then the father slept on the floor during a later visit and did not get up and interact with the children as directed by the FSRP worker. And at another visit, the father arrived an hour late, stayed in his vehicle for half an hour with his girlfriend, did not interact with the children once he came inside, and then brought his girlfriend on the family's McDonald's trip even though he knew she was not approved to participate in visitations.

In a January 2019 report to the court, the social worker assigned to the case disclosed that the parents stopped attending H.H.'s medical, dental, and mental-health appointments in June 2018. The social worker reported that T.H.'s foster parents were concerned with T.H. displaying sexualized behavior over the recent months. The report also indicated the father remained unemployed and took the mother's social security disability benefits for his own use.

Also in January 2019, the father was arrested in Illinois while with the mother and his girlfriend for possession of methamphetamine. He also appeared to be under the influence of drugs during January visitations. Nonetheless, the juvenile court provided the family an additional six months to work toward reunification following a January permanency hearing.

The father continued to be minimally engaged with the children. At a February visitation, he again attempted to bring his girlfriend along. When told she could not attend, the father left and sat in his vehicle for an hour with the girlfriend. When he eventually joined in the visitation, he did not interact with the children and instead played on his phone. At another visitation roughly two weeks later, the

father again stayed in his vehicle with his girlfriend for an hour before coming in. And once at the visitation, he focused largely on his phone. At another visitation lasting two hours, the father left at the beginning to get the children food, but he did not return for an hour and forty minutes.

During a March family team meeting, the father participated by phone and reported he could not leave Illinois to participate in services in Iowa due to some criminal charges. The father became agitated during the meeting and hung up the phone, terminating his participation in the meeting before it ended.

In April, the father was jailed. But he attended visitation a few days later. The father continued to arrive at visitations late and not interact with the children once he arrived. When he was told his girlfriend could not wait outside visitations, the father became angry and directed profanity at a care provider in front of the children. He left the visitation and waited outside with his girlfriend. The father did not attend the next visitation and instead sent his mother to communicate that he did not feel welcome at visitations because his girlfriend was not allowed to participate in any respect.

In May, the father continued to miss visitation. He cancelled one visitation. He failed to show up at another. And he dropped the mother off at visitation on another occasion but did not attend himself. Instead, he dropped by later and had his girlfriend deliver McDonald's to the family while he waited in his vehicle and then left.

Several visitations in June were cancelled, either by the parents or by providers after the parents failed to confirm ahead of time. And the father chose to not participate in another visitation when he dropped the mother off.

The juvenile court held a permanency hearing in July, but the father did not attend. Following the hearing, the juvenile court changed the permanency goal to termination of the parents' parental rights. An FSRP worker cancelled six visitations in July because neither parent confirmed visitations ahead of time. The same FSRP worker spotted the parents in a local park in mid-July and attempted to make contact with them, but the father left before she could make contact. And when the worker attempted to follow them, she could not keep up due to their speed.

In August, the parents continued to not confirm visitations, resulting in their cancellation. Once again, the FSRP worker spotted the parents in the community but could not make contact before the parents left. On a third occasion, the FSRP worker ran into the parents in the community, but the parents left the area once they spotted the worker.

The State petitioned for termination of the parents' parental rights, and the hearing was set for October. The juvenile court continued the termination hearing to December because the father was in jail in Hancock County, Illinois and he alleged the county jail would not permit him to participate by phone.

On November 1, the father moved from the county jail to a prison classification center in Illinois. Investigation with the classification center revealed the father could not start programming until he was moved from the classification center to the general prison population. The father also could not receive phone calls and could not make them until out of the classification center and he had funds to pay for the calls. As a result, DHS communication with the father was significantly impaired.

Following a December termination hearing, in which the father participated by phone, the juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(f) (2019). He now appeals.

**II. Scope and Standard of Review**

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We give weight to the factual determinations of the juvenile court but we are not bound by them. Grounds for termination must be proven by clear and convincing evidence. Our primary concern is the best interests of the child[ren]." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We use a three-step process to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we determine whether a ground for termination under Iowa Code section 232.116(1) has been established. *See id.* at 472–73. If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (citation omitted). Then we consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)). Finally, we consider any additional claims brought by the parent. *In re K.M.*, No. 19-1637, 2020 WL 110408, at *1 (Iowa Ct. App. Jan. 9, 2020).

**III. Discussion**

**A. Permanency Goal**

Although we typically begin with our three-step process, we first consider the father's contention that the juvenile court erred in setting the permanency goal to termination of parental rights in the August 2019 permanency order. But the

juvenile court's permanency order is not a final appealable order. *See In re T.R.*, 705 N.W.2d 6, 10–11 (Iowa 2005). "Furthermore, the provisions of the permanency order 'will inure or be subsumed in the termination proceeding.'" *In re S.P.*, No. 18-0432, 2018 WL 3913675, at *1 (Iowa Ct. App. Aug. 15, 2018) (citation omitted). So we need not address the father's challenge to the permanency order.[3]

### B. Statutory Grounds & Reasonable Efforts

The father challenges the sufficiency of the evidence supporting the statutory grounds authorizing termination. The juvenile court terminated the father's rights pursuant to Iowa Code section 232.116(1)(f). Section 232.116(1)(f) authorizes termination of a parent's parental rights when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

To the extent the father challenges the first three elements, we find them satisfied with respect to all three children. With respect to the fourth element, we find the children cannot be returned to the father. The father is currently

---

[3] Even if the permanency order was not subsumed in the termination proceeding, we could not address the father's claim. We acknowledge we may treat an appeal from a permanency order as an application for interlocutory review, but the deadline for such filing has passed. *See* Iowa R. App. P. 6.106(1)(b) (requiring applications for discretionary review be filed within thirty days of the order); *T.R.*, 705 N.W. at 11–12 (noting an appeal from a permanency order may be treated as an application for interlocutory review).

incarcerated in Illinois. And he does not have housing or employment secured following his release. He has largely been uncooperative throughout the case. The father did not participate in a substance-abuse evaluation and treatment. He did not cooperate with random drug testing. He did not accept housing assistance. He did not participate in parenting classes. His participation in visitation was sporadic and ineffective. As a result, his interactions with the children have been limited, and he has not gained the skills necessary to adequately parent, as is evidenced by his consistent practice of ignoring the children during visitation and prioritizing his girlfriend over the children. Moreover, he admitted he has not been able to maintain his sobriety over the life of this case. While the father promises to participate in rehabilitative services when he is in the general prison population, his past poor performance indicates he is unlikely to succeed in effective future parenting. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) (recognizing we consider a parent's past performance as indicative of the parent's future performance). Moreover, whether the children can be returned to the father under Iowa Code section 232.116(1)(f)(4) requires us to consider whether the children could be returned to the father at the time of the termination hearing—not some future point in time. *See In re J.B.*, No. 17-2038, 2018 WL 1182770, at *2 (Iowa Ct. App. Mar. 7, 2018) (clarifying "at the present time" under subparagraph (4) "means at the time of the termination hearing"); *cf. D.W.*, 791 N.W.2d at 707 (analyzing similar language under paragraph (h)).

The father contends these failures are a result of the State failing to make reasonable efforts. He argues his progress was hampered by a poor relationship with an FSRP worker and an unwelcome atmosphere at visitations. He contends

even after a different FSRP worker began supervising visitations, he did not trust the worker or participate because he believed she would notify police of his location and active warrant status.[4] He also argues services like drug testing and substance-abuse evaluations were not offered often enough, and he contends the State failed to provide any services after July 16, 2019.

We recognize "[t]he State must show reasonable efforts as part of its ultimate proof the child[ren] cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). However, parents must alert the court of the alleged deficiencies prior to the termination hearing. *See In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("If, however, a parent is not satisfied with DHS'[s] response to a request for other services, the parent must come to the court and present this challenge."); *In re O.T.*, No. 18-0837, 2018 WL 3302167, at *2 (Iowa Ct. App. July 5, 2018) ("The failure to request different or additional . . . services in the juvenile court precludes [the parent's] challenge to the services on appeal."); *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) (stating the parent has an obligation to demand other, different, or additional services prior to the termination hearing or the issue is considered waived for appeal). Our review of the record reveals no motion requesting additional services prior to the termination hearing. So we find the father waived any challenge to reasonable efforts.

For these reasons, we find the State established grounds for termination under section 232.116(1)(f). We move to the next step in our analysis.

---

[4] We note his active warrant status was of his own doing, and the record is devoid of any suggestion the FSRP worker played any part in the issuance of the warrant.

**C. Best Interests**

Next, we consider whether termination is in the children's best interests. In considering the best interests of children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive [children] of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child[ren]." *Id.* at 41.

We conclude termination is in the children's best interests. The father has proven himself an inconsistent participant in the children's lives. And that has been emotionally taxing on the children. Moreover, termination would provide the children with much needed stability and finality. T.H. is now in the care of her biological father and is integrating into that family. J.H. and H.H. are integrated into their respective placements, and both placements have expressed a desire to adopt the child in their respective care. *See* Iowa Code § 232.116(2)(b).

Because we conclude this step in our analysis is satisfied, we move to the next.

**D. Exceptions**

We complete our three-step analysis by considering if section 232.116(3) should be applied to preclude termination. "[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *See A.S.*, 906 N.W.2d at 476. Even if the parent proves an exception,

we are not required to apply the exception. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014). We exercise our discretion, "based on the unique circumstances of each case and the best interests of the child[ren]," to determine whether the parent-child relationships should be saved. *Id.* (citation omitted).

The father points to paragraphs (a), (c), and (e) to avoid termination. Paragraph (a) permits a juvenile court to preclude termination when "[a] relative has *legal custody* of the child." Iowa Code § 232.116(3)(a) (emphasis added). Paragraph (a) is inapplicable to H.H. because she remains in DHS's legal custody. *See A.M.*, 843 N.W.2d at 113; *In re B.W.*, No. 19-0602, 2019 WL 2375255, at *4 (Iowa Ct. App. June 5, 2019). And the father never asserted paragraph (a) should apply to T.H. or J.H. in the juvenile court, so his claim with respect to T.H. and J.H. is not preserved on appeal. *See In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003).

Paragraph (c) permits the court to preclude termination when "there is clear and convincing evidence that the termination would be detrimental to the child[ren] at the time due to the closeness of the parent-child relationship[s]." Iowa Code § 232.116(3)(c). When we consider whether to preclude termination pursuant to paragraph (c), we find no compelling reason to do so. We do not find the children's bonds with the father to be strong enough to overcome our concerns regarding the father. *See In re A.F.*, No. 19-1668, 2020 WL 569643, at *2 (Iowa Ct. App. Feb. 5, 2020).

Paragraph (e) permits the court to preclude termination when "[t]he absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces." Iowa Code § 232.116(3)(e). The father's claim is not preserved for review

because he never asked the juvenile court to preclude termination on this basis. *See K.C.*, 660 N.W.2d at 38. Further, the father is not in a hospital or health facility, and he is not in the armed forces. He is in prison. With respect to paragraph (e) this court has long held "institution" does not include prisons. *See In re J.S.*, 470 N.W.2d 48, 51 (Iowa Ct. App. 1991).

Therefore, on the third step of our review, we conclude no exception in section 232.116(3) applies to preclude termination of the father's parental rights.

**E. Due Process**

Finally, the father claims his due process rights were violated because the county attorney previously represented him in another case. But, as the State points out, the father never presented this claim to the juvenile court. Moreover, he attempts to interject facts into his petition on appeal that are not a part of the record. We will not consider facts not contained in the record. *See In re Marriage of Callenius*, 309 N.W.2d 510, 513 (Iowa 1981); *State v. Kula*, No. 16-0737, 2017 WL 3283285, at *8 (Iowa Ct. App. Aug. 2, 2017). And we will not address this claim for the first time on appeal. *See K.C.*, 660 N.W.2d at 38 ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").

**IV. Conclusion**

We determine the juvenile court correctly terminated the father's parental rights.

**AFFIRMED.**