In re MARRIAGE OF Judith L. McNERNEY and Joseph P. McNerney.

Upon the Petition of Judith L. McNerney, Appellee,

And Concerning Joseph P. McNerney, Appellant.

No. 86–1578.

Supreme Court of Iowa.

Dec. 23, 1987.

Joe and Judith McNerney were married on March 17, 1973. Judith had recently graduated from college. Joe had one semester of college but had little income. Judith worked some as a substitute teacher but the family had to rely on welfare.

Judith had two children by a previous marriage whom Joe later adopted. They were Teresa and Joseph who were nineteen and sixteen at the time of the dissolution proceeding. The parties agreed to joint custody with physical care placed with Judith. At the time of the proceeding Teresa was a sophomore in college and Joseph intended to go to college.

At the time of the marriage Judith owned a $16,000 home which was subject to an $11,000 mortgage. She also owned an automobile, furniture, and a lawn mower. At the time of the trial the home was worth about $48,500 and was subject to a $2400 mortgage.

Following their marriage Joe held a number of odd jobs while finishing college. But only Judith worked while Joe thereafter attended professional school. Joe eventually obtained a degree in osteopathic medicine. Joe borrowed more than $15,500 in student loans during this period.

In April 1981 Joe was in an automobile accident. As a result he has a "nonunion" of his right clavicle. This still causes pain. Under a settlement the McNerneys received $45,000. This money was invested in a certificate of deposit which at the time of the proceedings was worth $54,954. The settlement agreement did not specify what part of the $45,000 was for hospital expenses, lost wages, pain and suffering, damage to the automobile, or loss of consortium. As a result of the accident, Joe became addicted to pain killers. He entered a treatment facility and was put on five years' probation by the Iowa board of medical examiners.

In 1981 the McNerneys moved from Des Moines to Wall Lake, Iowa, where Joe entered into an agreement to finance a clinic. This leaves Joe with a substantial debt obligation. The clinic was financed by industrial revenue bonds from the city. Joe

Colin J. McCullough of McCullough Law Firm, Sac City, and Emil Trott, Jr., and Griff Wodtke of Barrett & Trott, Des Moines, for appellant.

Gregory J. Siemann of Green & Siemann, Carroll, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, LAVORATO, and NEUMAN, JJ.

HARRIS, Justice.

This dissolution of marriage proceeding involves the question whether proceeds of a personal injury claim are marital assets. We think the answer is yes; proceeds of a personal injury claim are marital assets, to be divided according to the circumstances of each case. Under the facts here we think the trial court correctly distributed the proceeds. We modify and affirm.

then bought the clinic. The trial court found that Joe owes $94,500 on the bonds and also owes a Wall Lake bank $38,000 on a personal loan.

Judith, a certified teacher, was attending college at the time of trial to obtain a master's degree in an effort to enhance her employability. She expected to have her master's degree by May 1987. Judith also borrowed nearly $8000 in student loans, $6734 of which Joe was ordered by the trial court to pay.

Joe made about $20,000 in the first six months of 1986. In 1985 Joe earned about $27,600.

Under the trial court's decree Joe was ordered to pay $300 per month for each child until they finished college, plus tuition for each. He was ordered to pay $1200 per month for alimony until June 10, 1987, at which time he was to pay $500 per month alimony until Judith's death, remarriage, or cohabitation.

Judith was awarded a house in Des Moines, as well as the Wall Lake home. She was also awarded a 1978 automobile and all of the household goods and furnishings in her possession. Joe was awarded the clinic building and the clinic equipment, as well as a small house. He was also awarded the drug inventory, accounts receivable, a 1983 automobile, and a life insurance policy.

The certificate of deposit purchased with the settlement money from Joe's personal injury lawsuit was divided, Judith receiving $13,112 and Joe receiving $41,842. The trial court's reason for dividing the certificate this way was that, in the absence of any evidence indicating what the settlement was intended to cover, it assumed some of it was to pay for damage to the automobile caused by the accident as well as for loss of consortium. The record disclosed that both Joe and Judith signed the settlement papers so the trial court could conclude Judith had some interest in the fund.

Joe was ordered to pay Judith's attorney fees, which totaled $8522, plus court costs. In all Joe was awarded $126,893 in assets and was ordered to pay $189,495 in liabilities. Judith was awarded $48,051 in assets and ordered to pay $7500 in liabilities.

I. Iowa is an "equitable distribution" state. Iowa Code section 598.21(1) (1985) directs a dissolution court to divide all property, except inherited property or gifts received by one party, equitably between the parties. Inherited property and gifts are set aside to the receiving party before the other property is divided. The question here is whether proceeds of a personal injury claim, although omitted from the statute, should be similarly treated and thus be withheld from division between the parties. It is a question of first impression in Iowa. Because Iowa is an equitable distribution state cases decided under community property statutes are not in point.

Equitable distribution statutes, such as our own section 598.21(1), have been interpreted in either of two ways. Some states have adopted the so-called "mechanistic approach." Under this analysis the court looks to the wording of the statute for the items expressly deleted from the property to be equitably distributed. Because section 598.21(1) mentions only two such items (inherited property and gifts), any other property would be assigned for equitable distribution. *See e.g., In re Marriage of Dettore*, 86 Ill.App.3d 540, 42 Ill.Dec. 51, 52, 408 N.E.2d 429, 430 (1980) (Illinois' statutes offer no professional refuge for workers' compensation awards "and funds of that genre."); *Di Tolvo v. Di Tolvo*, 131 N.J.Super. 72, 328 A.2d 625, 629 (App.Div. 1974) ("For purposes of equitable distribution incident to a divorce, a spouse's chose in action for personal injuries and the other spouse's *per quod* claim constitute property subject to ... distribution."). *See also Goode v. Goode*, 286 Ark. 463, 692 S.W.2d 757 (1985); *Johnson v. Johnson*, 638 S.W. 2d 703 (Ky.1982); *Gonzalez v. Gonzalez*, 689 S.W.2d 383 (Mo.App.1985); *Johnson v. Johnson*, 317 N.C. 437, 346 S.E.2d 430, 435 (1986); *Bero v. Bero*, 134 Vt. 533, 367 A.2d 165 (1976).

Other states pursue what has become known as the "analytic approach." It is popular among community property states. Under that approach the inquiry is into

what the personal injury award was intended to replace. *Johnson,* 346 S.E.2d at 435. The personal injury award is generally composed of three potential elements: (1) those compensating the injured spouse for pain and suffering, disability, disfigurement, or loss of limb; (2) those compensating for lost wages, lost earning capacity, and medical and hospital expenses; and (3) those compensating the noninjured spouse for loss of services or loss of consortium. *Id.* at 436. Insofar as the award is intended to replace pain and suffering it represents personal property of the injured spouse and is not subject to equitable distribution. *Id.* To the extent the award is intended to compensate for lost wages and medical expenses it represents marital property and is subject to equitable distribution. *Id.* To the extent it represents loss of consortium it belongs to the noninjured spouse. *Id.* As can be seen, this approach is actually more mechanical than the so-called mechanistic approach which leaves courts with more flexibility in dividing the property.

The analytic approach was developed in community property states and fits nicely within that system of distinguishing between marital and nonmarital property. But we have said that "we do not recognize community property in this jurisdiction, nor do we have a statute classifying certain assets as 'marital' property." *In re Marriage of Schissel,* 292 N.W.2d 421, 424 (Iowa 1980).

A few states which do not recognize community property have nevertheless adopted the analytic approach. These decisions generally proceed on the premise that parties who bring healthy bodies into a marriage are entitled to have them treated as separate property. Accordingly, compensation for injuries to the body should belong only to the injured spouse. *See e.g., Campbell v. Campbell,* 255 Ga. 461, 339 S.E.2d 591, 593 (1986) ("A personal injury claim settlement, to the extent that it represents compensation for pain and suffering and loss of capacity, is peculiarly personal to the party who receives it."); *Van de Loo v. Van de Loo,* 346 N.W.2d 173, 176 (Minn.App.1984) ("If the personal injury

monies are determined to be in exchange or replacement for property acquired before marriage, *i.e.,* the person's good health, it is nonmarital property."). *See also In re Marriage of Blankenship,* 682 P.2d 1354, 1357 (Mont.1984); *Gloria B.S. v. Richard G.S.,* 458 A.2d 707 (Del.Fam.Ct.1982).

Recognizing that the terms "mechanistic" and "analytic" are both misleading, we think it is more just to allow a trial court the flexibility to divide the property equitably on a case-by-case basis and therefore we adopt what is called the mechanistic approach. Settlement proceeds thus do not automatically belong to either party.

■ Based on its view of the record the trial court divided the proceeds, $13,112 to Judith and $41,842 to Joe. On appeal Joe, who insists the entire fund should be his alone, complains that the trial court's division was based on mere speculation and was unsupported by the record. It is true that the record contains no direct evidence on what percentage of the $45,000 settlement went to the various elements on which Joe or Judith might have recovered. No one directly testified that it was based on the division ordered by the trial court. On the other hand no one testified, as Joe would have it on appeal, that the $45,000 was computed only on a basis of his physical injuries and continuing pain. We do know that Judith was a party to the settlement. Evidence on this matter was peculiarly available to Joe and he did not produce it.

Under the record made we agree with the trial court's division of this asset. Joe's challenge to it is without merit.

II. Joe vigorously contends the court's division of assets and liabilities was not "equitable," and believes simple arithmetic bears him out. Joe was awarded $126,893 in assets and was ordered to pay $189,495 in liabilities. Judith was awarded $48,051 in assets and ordered to pay $7500 in liabilities. The trial court gave the following explanation for this division:

> The majority of the debts have been incurred for the purpose of starting his clinics, completing his education, and cur-

rent living expenses. As an osteopathic doctor, [Joe's] earnings will increase over the years, and he will be more in a position to pay the obligations than will [Judith]. [Judith] will have no trouble finding a teaching position upon her completion of her education, but the earnings from such a position will not have the opportunity for increase as will the earnings of [Joe].

In a marriage dissolution action an equal division or percentage division of the property is not required. The court should base the division on the basis of what is equitable and just under all the circumstances. *In re Marriage of Hoak*, 364 N.W.2d 185, 194 (Iowa 1985). Although alimony and property distribution are distinguishable and have different purposes in marriage dissolution proceedings, they are closely related in determining the amount to be allowed. *In re Marriage of Callenius*, 309 N.W.2d 510, 513–14 (Iowa 1981) (citing *In re Marriage of Cooper*, 225 N.W. 2d 915, 919 (Iowa 1975)). The question is whether the property division and alimony taken together are equitable to both parties. *Id.*

We agree with the trial court's view that an equal division of present assets and liabilities would be inappropriate here. During the years of this marriage the parties undertook the long-range project of transforming Joe from a largely uneducated young man of modest means into a practicing physician with great earning potential. Joe's radically improved situation was undoubtedly achieved with considerable effort and sacrifice on his own part, but the effort and sacrifice cannot be isolated from the marriage. It does not strike us as fair at this point in Joe's career to simply add up the family assets, subtract the liabilities (including those for student loans and bonding obligations for a clinic), and divide the net by two.

The case is strikingly similar to *In re Marriage of Janssen*, 348 N.W.2d 251 (Iowa 1984). In *Janssen*, the husband also had obtained a degree in osteopathic medicine during the marriage. The wife was a medical technologist and was entering law school. We considered the husband's earning capacity on the issue of alimony. Missing from *Janssen* and present here is a claim that earning capacity is decreased due to a physical injury. Joe's support obligations for 1987 total $16,700. He was also ordered to pay tuition and insurance for the children. His earnings for 1985 were modest. We nevertheless think, even with his injury, he has great earning potential and that equity demands that he come to terms with Judith's contributions which placed him in his present promising position.

Upon our de novo review we agree with the trial court's distribution and awards with one exception. The record indicates that Joe's injury will have some limiting effect on his earning capacity and also indicates that Judith's earning capacity will improve as a result of obtaining a master's degree. In view of these prospects we think the $500 monthly alimony to Judith should terminate on June 10, 1992, five years after it was to be reduced from $1200 per month under the trial court judgment.

We agree with the trial court's fee award for Judith's attorney in trial court. Judith should, however, pay her own attorney fees on appeal.

Tax costs seventy-five percent to Joe; twenty-five percent to Judith.

AFFIRMED AS MODIFIED.