**IN THE COURT OF APPEALS OF IOWA**

No. 14-0087
Filed October 15, 2014

**IN RE THE MARRIAGE OF CATHY J. KLEMME
AND THOMAS W. KLEMME**

**Upon the Petition of
CATHY J. KLEMME,**
        Petitioner-Appellee,

**And Concerning
THOMAS W. KLEMME,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Scott County, Mark D. Cleve,

Judge.


        Thomas Klemme appeals from the economic provisions of the decree

dissolving his marriage to Cathy Klemme.  **AFFIRMED AS MODIFIED.**


        Lauren M. Phelps, Davenport, for appellant.

        John R. Newman, Davenport, for appellee.


        Considered by Doyle, P.J., McDonald, J., and Sackett, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**SACKETT, S.J.**

Thomas Klemme appeals from the economic provisions of the decree dissolving his marriage to Cathy Klemme. He contends the property distribution is inequitable. He also contends Cathy is not entitled to an award of spousal support. If spousal support is awarded, Thomas argues it should be for a smaller amount and a shorter duration.

**I. Background Facts and Proceedings.**

Thomas and Cathy were married in 1977. During the marriage, Thomas obtained his commercial driver's license, which he still maintains, though he has never relied on it for his primary income. For approximately thirteen years, Thomas worked as a supervisor for Bowater and earned about $38,000 per year. Cathy earned a cosmetology degree, but her cosmetology license has expired. Cathy testified that she would need approximately 1500 hours of continuing education to become licensed in Iowa.

In 1989, Cathy was injured in an automobile accident that prevents her from lifting her arms for long period of times. The parties agree she is permanently disabled as a result. In 1991, Cathy and Thomas entered a settlement agreement regarding all potential personal-injury claims stemming from the accident whereby they received $111,563.78. The settlement agreement does not allocate the proceeds to particular categories of damages that may have been claimed.

With the proceeds from the settlement, the parties purchased a home in Davenport for $58,000. The settlement proceeds also helped defray living

expenses. Then in 1994, Thomas began a motorcycle repair business. The couple made a $25,000 down payment on a building for the business. Cathy began working full-time for the business in 1996, doing ordering, pricing, inventory, and banking. Neither party received a salary from the business, though as the only shareholder, Thomas received corporate distributions. He also supplemented that income with money earned from racing motorcycles and commercial driving. Cathy supplemented their income with part-time work as well, working approximately six hours per week from 2001 to 2012. For the years 2010 through 2012, the parties reported income of between $6000 and $8600 from the business. Thomas cashed in a 401(k) in the amount of $25,586.86 in December 2012 to pay income taxes and insurance, as well as some of Cathy's expenses.

Cathy filed a petition to dissolve the marriage in January 2013. The parties stipulated to the sale of all marital assets aside from clothing, personal property, and one vehicle each. Trial was held in December 2013. The court was to determine the value of the parties' property, how the property was to be distributed, whether Cathy should receive a credit for her personal injury settlement, and whether Cathy should be awarded spousal support and in what amount.

The district court entered its decree dissolving the parties' marriage on December 17, 2013. Although both parties were unemployed at the time, the court found Thomas was capable of earning $50,000 per year as a commercial driver, whereas that Cathy was only able to make minimum wage. Because of

the disparity in potential earnings, the court ordered Thomas to pay Cathy $650 per month in spousal support for a period of ten years.

The court valued the parties' assets and divided them equally between the parties. For instance, the court awarded Thomas a Wells Fargo account valued at $1000 and ordered him to pay Cathy $500 to equalize the distribution. It awarded Cathy a First Midwest Bank account valued at $308 and ordered her to pay Thomas $154 to equalize the distribution. This equal distribution was made for all assets save two. With regard to the marital home, the court ordered that the first $58,000 received from its sale be distributed to Cathy "to reimburse her for the settlement proceeds used in the purchase of the home," and ordered the remaining proceeds be divided between the parties. Likewise, it ordered that the first $25,000 in proceeds from the sale of the business building be distributed to Cathy "to reimburse her for her personal injury settlement proceeds used as a down payment on the building," with the remaining proceeds divided equally.

**II. Scope of Review.**

We review dissolution of marriage cases de novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We review the entire record and adjudicate rights anew. *Id.* We give deference to the district court's findings, especially those concerning witness credibility, but are not bound by them. *Id.*

**III. Analysis.**

Thomas appeals the property distribution and spousal support provisions of the decree. Specifically, he contends the court erred in setting aside $83,000 to reimburse Cathy for the proceeds from her personal-injury settlement that

were used to purchase the marital home and make a down payment on the business property. He also contends Cathy should not receive spousal support, or that the amount paid and duration of support should be reduced. We consider the property division and spousal support provisions together to determine their sufficiency. *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa 2009).

Iowa Code section 598.21 sets forth the criteria for property distribution. It states that the court shall equitably divide "*all* property, except inherited property or gifts received or expected by one party." Iowa Code § 598.21(5) (emphasis added). With regard to gifted or inherited property, it states:

> Property inherited by either party or gifts received by either party prior to or during the course of the marriage is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide the property is inequitable to the other party or to the children of the marriage.

*Id.* § 598.21(6). In other words, the only property that is not subject to division is property that is inherited or gifted exclusively to one party before or during the marriage. However, even that property is divisible if failing to include it in the property distribution would be inequitable. The legislature did not explicitly exclude personal-injury settlements from property division.

Our supreme court has analyzed the omission of proceeds from personal-injury settlements from the list of items expressly excluded from property distribution in section 598.21 and determined such proceeds are marital assets. *In re Marriage of McNerney*, 417 N.W.2d 205, 207-08 (Iowa 1987). It held settlement proceeds "do not automatically belong to either party"; rather, the court must determine whether to divide the property on a case-by-case basis. *Id.*

The *McNerney* court found it was equitable to award the wife $13,112 of the $54,954 in settlement proceeds and interest from the husband's personal injury settlement. *Id.* at 206-07. As in the case before us, both the husband and wife were party to the settlement agreement, which did not set forth the categories of damages being compensated. *Id.* at 208. However, the husband in *McNerney* was injured eight years into a thirteen-year marriage, *id.* at 206, whereas Cathy was injured twelve years into a thirty-six year marriage. While the McNerneys invested their settlement proceeds in a certificate of deposit that remained untouched during the marriage, *id.*, the Klemmes's settlement proceeds were spent on property and other expenses to benefit the marriage and were depleted before the marriage's end.

Under the facts of this case, it is inequitable to set aside $83,000 from the property settlement to "reimburse" Cathy for the use of the proceeds of her personal injury settlement. According to Cathy's own estimates, the anticipated proceeds from the sale of that real estate after costs would be $150,000 to $189,000. Setting aside the $83,000 for Cathy results in a distribution of between $116,500 and $136,000 to Cathy and between $33,500 and $53,000 to Thomas. While an equal distribution is not required, an equitable distribution is. *Hazen*, 778 N.W.2d at 59. Considering the factors set forth in Iowa Code section 598.21(5)—especially the length of the marriage, the more than twenty years that passed between the receipt of the settlement proceeds and the divorce, and the manner in which the proceeds were spent—we find an equal distribution of the property is equitable. Accordingly, we modify the property distribution to

eliminate the provisions requiring the first $58,000 of the proceeds from the sale of the home and the first $25,000 from the sale of the building be awarded to Cathy, and instead order an equal division of all the proceeds from those sales.

We then turn to the spousal support provisions of the decree. Although our review is de novo, we afford the trial court considerable latitude in determining spousal support awards. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). We only disturb such an award where there has been a failure to do equity. *Id.*

Alimony and property distribution are distinguishable and have different purposes in marriage dissolution proceedings. *McNerny*, 417 N.W.2d at 209.

> It is anticipated that spousal support will be paid from future income whereas property distributions are designed to sort out property interests acquired in the past. A property division divides the property at hand and is not modifiable while a spousal support award is made in contemplation of the parties' future earnings and is modifiable. [A spouse]'s future income can change or disappear and his alimony obligation can decrease or be eliminated. Furthermore, spousal support has different income tax implications than a property settlement. It is true that some distinctions between property division and alimony have become blurred with the growth of equitable distribution principles. However, disregarding the differences between property division and alimony when determining the economic provisions of a divorce decree may cause an inequitable result.

*Hazen*, 778 N.W.2d at 89-90 (citations and footnote omitted). Therefore, property division and spousal supports awards are closely related in determining the amount to be awarded of either. *McNerny*, 417 N.W.2d at 209. "The question is whether the property division and alimony taken together are equitable to both parties." *Id.*

Spousal support is not an absolute right, and whether such an award is justified depends on the facts of each case. *Hazen*, 778 N.W.2d at 61. The criteria for awarding spousal support is set forth in Iowa Code section 598.21A. In addition to the property distribution, we are to consider the length of the marriage, the parties' age and health, each party's earning capacity, and any other factors relevant to an individual case. Iowa Code § 598.21A(1)(a)-(c), (e), (j).

Thomas contends Cathy should not receive any spousal support. In the alternative, he contends the spousal support award should be substantially lower and shorter in duration. He also notes the court failed to specify the type of spousal support it was awarding.

At the time of dissolution, neither party was employed. Consequently, the court used the parties' earning capacity to determine whether an award of spousal support was appropriate. Cathy's ability to find employment is limited by her education and the physical disability caused by her personal injury. As a result, the district court found she is limited to minimum wage positions. Thomas disputes this finding, arguing that Cathy earned around $13.30 per hour from 2001 until 2012, while working part-time as a bookkeeper for Malik's Super Sweep. The evidence that Cathy earned more than minimum wage in a position she worked for six hours per week does not support a finding that she could find full-time employment at this rate. We agree the evidence shows Cathy is capable of earning minimum wage in a full-time position, and therefore has an earning capacity of approximately $15,000 per year.

The district court found Thomas had an earning capacity of $50,000 per year. We agree with Thomas that this figure is too high. The evidence shows that Thomas has never worked full-time as a commercial driver. Thomas testified his nephew earns $50,000 per year driving, but he owns his own semi-truck. While the parties bought a semi-truck at one point, they sold it because they were losing money. Thomas has taken driving jobs to supplement the parties' income, and he testified he earned approximately $400 per two-day trip. If calculated as $200 per day[1] and assuming a five-day workweek, Thomas would be capable of earning $50,000 per year as determined by the district court. However, Thomas testified he has never been offered full-time employment at that rate. There is evidence that Thomas was offered $700 per week as a driver, which would amount to $36,400 per year. The evidence further shows that Thomas was earning $38,000 per year as a supervisor before starting his business in 1994. Accordingly, we find the evidence more appropriately supports a finding Thomas's earning capacity at present is $38,000 per year.[2] Given the disparity between the parties' earning capacities, we find an award of spousal support is justified. *See In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa

---

[1] This figure does not take into account Federal Motor Carrier Safety Administration rules regarding daily-driving limit. *See generally* 49 C.F.R. § 395.3 (2013). There is no evidence to support a finding this type of employment is either available to Thomas or feasible.

[2] If Thomas earns more than $38,000 per year, Cathy can bring a modification action to increase the amount of spousal support she receives. *See* Iowa Code § 598.21C(1)(a) (listing "[c]hanges in the employment, earning capacity, income, or resources of a party" as a factor to be considered in modifying spousal support); *In re Marriage of Sisson*, 843 N.W.2d 866, 870-71 (Iowa 2014) (noting that in order to support a modification in spousal support, the changed circumstances must not have been within the contemplation of the court at the time of the decree).

Ct. App. 1997) ("Following a marriage of long duration, we have affirmed awards of both alimony and substantially equal property distribution, especially where the disparity in earning capacity has been great.").

We must then consider what type of spousal support is appropriate, and the amount and duration of spousal support to be paid. There are three types of spousal support—traditional, rehabilitative, and reimbursement—and the purpose of each is different. *See In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008). Traditional spousal support is payable for life or for as long as a spouse is incapable of self-support. *Id.* The goal of rehabilitative spousal support is support an economically-dependent spouse through a limited period or re-education and retraining, to allow the spouse to become self-supporting. *Id.* Finally, reimbursement spousal support is awarded to compensate a spouse for contributions to the other spouse's earning capacity. *Id.*

We find an award of traditional support is appropriate given the parties' thirty-six-year marriage. Considering Cathy's age, education, and disability, it is unlikely she will be able to become self-supporting. The property distribution will leave Cathy with between approximately $75,000 and $94,500. We find an appropriate award of spousal support to be $300 per month until Catchy reaches the age of sixty-five, remarries, or cohabitates with a non-related male. The spousal support provision of the decree is modified accordingly.

We decline to award attorney fees on appeal. Costs of the appeal are split equally between the parties.

**AFFIRMED AS MODIFIED.**