# IN THE COURT OF APPEALS OF IOWA

No. 15-1207
Filed June 29, 2016

IN RE THE MARRIAGE OF RILLA MARIE SCHMITT
AND JAMES LEE SCHMITT

Upon the Petition of
**RILLA MARIE SCHMITT,**
      Petitioner-Appellant,

**And Concerning**
**JAMES LEE SCHMITT,**
      Respondent-Appellee.
_____

Appeal from the Iowa District Court for Mills County, James S. Heckerman, Judge.

The wife appeals from the economic provisions of a dissolution decree.
**AFFIRMED AS MODIFIED.**

J.C. Salvo and Bryan D. Swain of Salvo, Deren, Schenck, Swain & Aargotsinger, P.C., Harlan, for appellant.

Suellen Overton of Overton Law Office, Waukee, for appellee.

Heard by Potterfield, P.J., and Mullins and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

Rilla Marie Schmitt appeals from the economic provisions of the decree dissolving her marriage to James Schmitt. Rilla contends the district court's division of assets was inequitable because the court refused to divide the settlement payments James received for a childhood injury.

**I. Background Facts and Proceedings**

In 1981, when James was thirteen years old, he permanently lost the vision in one of his eyes due to an exploding glass bottle. James filed a lawsuit against the bottle's manufacturer and ultimately received a structured settlement comprised of a series of payments, scheduled to be received as follows: $50,000 on August 6, 1994, $75,000 in 1996, $100,000 in 1999, $125,000 in 2001, $150,000 in 2004, $200,000 in 2006, $250,000 in 2009, $300,000 in 2011, $350,000 in 2014, and a final payment of $375,000 on August 6, 2015.

James and Rilla married in March 1997. It was the second marriage for each party. Rilla had two daughters from her first marriage, and James adopted them in 2000. The parties also had a son.[1]

During the period after the parties married and before the dissolution petition was filed, James received $1.125 million in settlement payments. Both Rilla and James testified the money was always placed in their joint checking account and used to finance their family's lifestyle. The family moved often—typically buying a more expensive home than the one they were leaving and often taking a loss on the previous home.

---

[1] Only the son was still a minor at the time of dissolution. The parties do not contest any legal issues involving the minor child on appeal.

James worked a series of jobs until he was injured at work in 2012. At the time of the trial, James was not employed and was receiving $1136 in Social Security disability payments each month. He had also received a settlement for his work injury, which included $135,000 that had been placed in the joint checking account and spent. Only a Medicaid set-aside account with an additional $13,073 remained of the work-injury settlement. For most of the parties' marriage, Rilla did not work full-time outside of the home. After James was injured in 2012, she obtained a full-time job with a company as a salesperson, and she earned approximately $86,000 in 2012. In 2013, Rilla was diagnosed with cancer, and she was unable to work for approximately one and one-half years. When she was able to return to work, the company no longer had an opening for her former position and instead offered her a job that would require her to be away from home four nights per week. Instead, Rilla took a sales position with a different company, and her base salary was $25,000 annually with the chance to earn commission on her sales. At the time of trial, she testified she had only earned $1000 in commission during the eight months she had been employed in the position.

James moved out of the marital home in March 2014, and Rilla filed the petition for dissolution shortly thereafter. When James received the scheduled $350,000 settlement payment in August 2014, as a temporary matter, the court ordered James to retain $40,000, to provide Rilla $10,000, to pay off the outstanding home loan interest in the of amount of $9926.59, and to place the remaining $290,073.41 in a trust pending the resolution of the dissolution action.

The matter came to trial in May 2015. Rilla asked the court to divide the balance of the $350,000 settlement payment as well as the anticipated $375,000 payment.[2] James maintained that neither of the payments were marital monies and they should not be divided. James also maintained that the $13,073 in his Medicaid set-aside account was not a marital asset. The parties disagreed slightly on the value of many smaller items to be divided, but the largest disagreement was over the value of the marital home. The parties paid $365,000 for the home two years prior to the dissolution and had a $123,000 mortgage on the property at the time of trial. Neither party obtained an appraisal of the home. James maintained the house retained the same value it had when they purchased it whereas Rilla argued that the assessed value of the home, $312,000, was the most reliable value due to declining home values in the area. Also, Rilla testified that James was engaged in buying and selling machinery as a means of making money. She testified she believed he had $100,000 worth of purchased, unsold equipment that he was keeping at a family member's home and not disclosing to the court. James denied it and his brother testified similarly, stating that various family members were engaged in buying and selling machinery, but each kept their own machinery separate and at their own property.

---

[2] On appeal, Rilla asserts that she only asked the court to divide the $350,000 payment that was received prior to dissolution. However, in the decree, the court stated Rilla had asked for both payments to be considered marital property and divided. Additionally, we note that in her proposed distribution of assets that was introduced into evidence, Rilla shows James receiving the entire future $375,000 payment but only after awarding herself the lion's share of the marital assets the parties already owned.

On May 15, 2015, the court filed the dissolution decree. The court did not explicitly find the values of the items it divided, but it awarded Rilla the following: the marital home subject to the $123,000 mortgage, "the 2013 Ford Edge, her 401K account and IRA account, her checking and savings accounts, the household furnishings, miscellaneous IT equipment and appliances located in the marital home, the JDZ Mower and bagger, the JD lawn tractor and tiller, the 2006 Polaris with blade," and other personal items currently in her possession. The court specifically "decline[d] to award Rilla any of the proceeds from this settlement," except James was ordered to pay out of the proceeds the $19,000 car loan on the Ford Edge and Rilla's attorney fees in the amount of $10,450. James was awarded the rest of the $350,000 payment not disbursed in the temporary order or in the decree and all of the upcoming $375,000 payment, in addition to the "2008 Ford F350, his IRA's, his checking and savings accounts, his miscellaneous IT equipment, the contents of the storage unit, the 2014 Trailer, the log splitter, the lawn sweeper, and any other personal items currently in his possession."

The court then stated, "After placing values on the items under paragraphs 9 and 10, Rilla is awarded $116,300 more than [James]." Later, after Rilla filed a motion to amend and enlarge, the court ordered James to pay Rilla alimony in the amount of $1000 per month for sixty months. The court determined Rilla's larger amount of assets offset the alimony award and deemed both the alimony payments and equalization payment satisfied.

Additionally, the court clarified that it had used Rilla's proposed value for the marital home. It also noted that Rilla had the burden to establish James had the additional $100,000 in machinery and that she had not met her burden.

Rilla appeals.

## II. Standard of Review

We review dissolution cases de novo. *See In re Marriage of Schriner*, 695 N.W.2d 493, 495 (Iowa 2005). "Although our review of the trial court's award is de novo, we accord the trial court considerable latitude in making this determination and will disturb the ruling only when there has been a failure to do equity." *Id.* at 496 (citations omitted).

## III. Discussion

### A. Equitable Distribution

Rilla maintains the district court's division of assets was not equitable because the court refused to divide the $350,000 settlement payment James received before the dissolution; all but $59,926.59 had been ordered held in trust pending the dissolution. Specifically, she maintains the district court should have ordered the $123,000 balance of the home mortgage to be paid with the funds and awarded her $59,000 in cash. James responds that the district court's decision to set aside his settlement proceeds was equitable because the money was meant "to compensate him for a lifetime of blindness in one eye." Additionally, he maintains the assets Rilla received from the marriage were only possible because of the settlement payments he received during the marriage.

Here, it appears the district court set aside both the remaining funds from the $350,000 payment received before the dissolution and the future $375,000

payment as nonmarital property. In the order filed by the court after Rilla's motion to enlarge and amend, the court stated it had "explained to both parties that it was not awarding the Petitioner any of the Respondent's annuity monies" although it had "considered the monies not only in its award of alimony but also in its valuation of the property." Additionally, the court, without explicitly listing the values associated with the various awards, noted that Rilla had been awarded $116,300 more than James. This statement is consistent with the court's decision not to divide either of the settlement payments in question.

However, the settlement payment received before the dissolution is marital property and should have been considered in the division of assets. Iowa is an "equitable distribution" jurisdiction. *Schriner*, 695 N.W.2d at 496; *see also* Iowa Code § 598.21(5) (2013). "'Equitable distribution' essentially means that courts divide the property of the parties *at the time of divorce*, except any property excluded from the divisible estate as separate property . . . ." *Schriner*, 695 N.W.2d at 496 (emphasis added). In Iowa, only two types of property are specifically excluded by statute from the divisible estate—inherited property and gifts received by one party. *Id*.; *see also* Iowa Code § 598.21(5). In *In re Marriage of McNerney*, 417 N.W.2d 205, 206 (Iowa 1987), our supreme court determined that "proceeds from a personal injury claim are marital assets . . . to be divided according to the circumstances of each case." "Settlement proceeds thus do not automatically belong to either party."[3] *McNerny*, 417 N.W.2d at 208.

---

[3] We recognize that the facts of *McNerny* are distinguishable from the present facts because the injured spouse in *McNerny* sustained the injury during the parties' marriage. *McNerny*, 417 N.W.2d at 206. However, we do not believe the court's ruling depended on when the injury occurred.

The court reaffirmed this holding in *Schriner* and ruled that workers' compensation benefits received during the marriage were marital property to be divided. 695 N.W.2d at 497–98. The court differentiated between benefits received during the marriage, which were to be treated as marital property, and benefits or proceeds received after the divorce is final, which were "separate property of the injured spouse." *Id.* at 498–99; *see also In re Marriage of McLaughlin*, 526 N.W.2d 342, 344 (Iowa Ct. App. 1994) ("The date of the dissolution is the only reasonable time when an assessment of the parties' net worth should be undertaken. We value property for division at the time of the dissolution." (citation omitted)). The *Schriner* court emphasized the flexibility of its approach, noting that it allowed the district court to consider the injured spouse's arguments concerning loss of wages and pain and suffering when determining the best way to divide the benefits. *Id.* at 499 ("These factors authorize the court to consider the disability of an injured spouse and could support an award of a larger portion of property to a disabled spouse, including a larger portion, or all, of the workers' compensation benefits. Conversely, the same statutory factors could permit a court to use workers' compensation benefits expected to be received by an injured spouse after the divorce as a circumstance to justify an award to the other spouse of a larger portion of the property subject to division.").

With that in mind, we review the district court's division of the marital assets and include the $350,000 settlement payment James received in August

2014 as part of the marital assets to be divided.[4]  At the time of the dissolution, the parties had approximately $643,400 in marital assets to be divided; Rilla received approximately $278,450 in assets and accounts while James was awarded approximately $364,950.  While the division was clearly not equal, the question is whether it was equitable.  *See In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007) ("An equitable division is not necessarily an equal division.").  We consider the factors outlined in Iowa Code section 598.21(5), which include, among others, the length of the marriage, the age and physical health of the parties, and the earning capacity of each party.

Rilla and James were each forty-six years old at the time of the dissolution hearing.  Rilla had health issues in the years leading up to the dissolution, but she testified she was healthy at the time of the hearing.  Rilla was working in a new job and earning a base salary of $25,000 annually.  She hoped to earn substantially more with commissions, but she had only earned $1000 in commission in her first eight months in the position.  James was unemployed and receiving $1136 in disability payments per month.  The parties had been married seventeen and one-half years at the time of dissolution. Throughout their marriage, they lived at a higher standard of living than was sustainable without the regular settlement payments.

Because the district court failed to consider the balance of the $350,000 payment remaining after the temporary order as marital property, we believe the division was inequitable.  Based upon our calculations, the district court awarded

---

[4] We do not divide the $375,000 payment James was to receive after dissolution, but we keep it in mind when deciding if the division was equitable.

James approximately $86,500 more than Rilla was awarded. The parties had a long marriage. At the time of trial, both were living on an income that could not sustain their previous standard of living. However, James was scheduled to receive one final settlement payment worth $375,000 within months of the divorce. We do not believe he should also receive more of the marital property as well. We modify the district court's award to order James to make an equalizing payment to Rilla in the amount of $43,250.

In doing so, we do not rejuvenate the district court's award of alimony to Rilla. Rilla never requested alimony, and it was not an issue at the trial. The district court used the alimony award and the equalization payment to be paid by Rilla as a legal fiction in order to come to what it believed was an equitable result. Moreover, the district court deemed both the alimony and Rilla's equalization payment as a wash, each offset and satisfied, and neither party has challenged that ruling on appeal.

### B. Appellate Attorney Fees

Both parties ask the court to award them appellate attorney fees. Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). Although Rilla was meritorious on appeal, we believe our modification of the property award sufficiently equips Rilla to pay her own attorney fees. *See In re Marriage of Hitchcock*, 309 N.W.2d 432, 438 (Iowa 1981). Additionally, after

considering James's need for appellate attorney fees and Rilla's ability to pay, we decline to award James appellate attorney fees.

## IV. Conclusion

Because the $350,000 settlement payment received prior to dissolution was marital property to be considered in the equitable distribution, we modify the district court's award and order James to pay Rilla an equalizing payment of $43,250. We decline to award either party appellate attorney fees.

Costs of this appeal are assessed to James.

**AFFIRMED AS MODIFIED.**