# IN THE COURT OF APPEALS OF IOWA

No. 16-0768
Filed January 25, 2017

IN RE THE MARRIAGE OF BENJAMIN RIGDON
AND ALICIA RIGDON

Upon the Petition of
BENJAMIN RIGDON,
    Petitioner-Appellee/Cross-Appellant,

And Concerning
ALICIA RIGDON,
    Respondent-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Des Moines County, Mary Ann Brown, Judge.

The wife appeals from the physical-care provisions of the decree awarding the husband physical care of their minor child. The husband cross-appeals from the economic provisions of the decree excluding from the marital assets a financial settlement the wife received during the marriage. **AFFIRMED ON BOTH APPEALS**

Mark R. Hinshaw of The Law Offices of Mark R. Hinshaw, West Des Moines, for appellant.

Mitchell L. Taylor and Joshua P. Schier of Cray Law Firm, P.L.C., Burlington, for appellee.

Considered by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

Alicia Rigdon appeals from the physical-care provisions of the decree awarding Benjamin Rigdon physical care of their minor child. Benjamin Rigdon cross-appeals from the economic provisions of the decree and contends the district court's division of assets was inequitable because the court refused to divide the settlement funds Alicia received during the marriage.

## I. Background Facts and Proceedings

On March 23, 2000, the parties were married in Missouri. Alicia was attending law school at the time of their marriage and graduated in 2001. Ben also pursued his education during the marriage and obtained his B.A. in 2004. Due to Alicia's acceptance of a job, the parties moved to New London, Iowa in 2005. Their minor child, L.J.R., was born in 2009. Alicia resides in Loganville, Georgia, and is employed as corporate counsel. Ben and L.J.R. reside in New London, Iowa, on a farm where Ben raises cattle. Ben is employed as a quality control engineer. Throughout the marriage, the parties struggled with their relationship. Alicia also accused Ben of verbal and physical abuse.

In August 2014, Alicia accepted a job opportunity and moved to New Jersey on her own. It is unclear from the record whether the parties agreed to move to New Jersey together. Alicia testified that the ultimate goal was to have Ben and L.J.R. join her in New Jersey. Although Ben visited Alicia in New Jersey to help her find an apartment, he denied any agreement to move the family to New Jersey permanently. Both parties acknowledge marital troubles during and before Alicia's move to New Jersey. Alicia visited Ben and L.J.R. frequently during her time away.

A dispute between Alicia and her New Jersey employer resulted in Alicia's separation from her employment and a monetary settlement of $195,000.[1] In September 2015, Alicia moved to Loganville, Georgia, where she began working for her current employer.

Both parents have shown a strong ability to care for L.J.R. For example, Alicia was L.J.R.'s primary caregiver before her move, and Ben overtook the primary caregiving duties after Alicia's move. Ben coaches the child's soccer team, volunteers at his school, and teaches L.J.R. about the day-to-day agricultural activities at home. Alicia also stays active in L.J.R.'s life, even from afar. She has flown back to Iowa to attend L.J.R.'s school events, participates in conferences telephonically, and communicates with L.J.R. frequently.

Despite the parties' tenuous relationship, L.J.R. is thriving in his current environment. He is energetic, inquisitive, and eager to learn at school. He also enjoys working with the cattle at home. L.J.R. has a permanent daytime caregiver who has cared for him since birth. The parties describe L.J.R.'s connection with his caregiver as a grandparent-grandchild relationship.

On June 22, 2015, Ben filed a petition to dissolve the marriage. Both parties asked for physical care of L.J.R. and agreed on a visitation schedule for the non-custodial parent. The geographical distance between the parties means joint physical care is not an option. The parties also principally agreed on the property distribution, except for the settlement funds Alicia received from her New Jersey employer. On April 15, 2016, the district court issued a decree

---

[1] There is some disagreement in the record as to the gross amount of the settlement. Responses ranged from $280,000–$298,500. However, the parties agree that the net amount is $195,000 after all applicable withholdings.

awarding Ben physical care of L.J.R. The district court did not include the settlement payment as marital property, awarded $12,322 net assets to Alicia, $119,059 net assets to Ben, and a $53,368 equalization payment from Ben to Alicia.

Alicia appeals the court's decision to award Ben physical care of the child. Ben cross-appeals the court's decision to set aside the settlement payment as Alicia's individual asset.

## II. Scope and Standard of Review

We review cases tried in equity, such as dissolution cases, de novo. Iowa R. App. P. 6.907; *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 483–84 (Iowa 2012). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). "Prior cases are of little precedential value, except to provide a framework for analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us." *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995).

## III. Discussion

### A. Physical-Care Determination

Alicia appeals the district court's decision placing L.J.R. under Ben's physical care. "Physical care" involves "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." Iowa Code § 598.1(7) (2015). "The parent awarded physical care maintains the primary residence and has the right to determine the myriad of details associated with routine living, including such things as what clothes the children wear, when they

go to bed, with whom they associate or date, etc." *In re Marriage of Hansen*, 733 N.W.2d 683, 691 (Iowa 2007). The fundamental goal in determining physical care of a child in an action for dissolution of marriage is to place the child in the care of the parent who will likely accommodate the long-range best interests of the child. *In re Marriage of Winter*, 223 N.W.2d 165, 167 (Iowa 1974). "[T]he basic framework for determining the best interest of the child" is well established. *See* Iowa Code § 598.41; *Hansen*, 733 N.W.2d at 696. Generally, stability and continuity of caregiving are important considerations. *Hansen*, 733 N.W.2d at 696. Finally, "[t]he objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.* at 695.

Alicia maintains the district court should have awarded her physical care of the child. She argues that Ben's abusive behavior and lack of caregiving experience precludes him from caring for L.J.R. We disagree.

Alicia testified that Ben was abusive on several occasions. However, the district court concluded:

> There was limited testimony about incidents where Ben was aggressive towards Alicia. On at least one occasion, Ben reports that Alicia slapped him. There is no evidence that there was a pattern of physical abuse in this family. Any incidents were isolated, if they did occur. The court cannot find compelling evidence that there was a pattern of domestic abuse in this relationship. This, of course, would be other than the emotional abuse that Ben and Alicia perpetrated upon each other during the entire course of their marriage.

To the extent that any abuse occurred, it was not enough to dissuade Alicia from leaving the child with Ben for an extended period after she moved from Iowa to New Jersey. *See In re Marriage of Forbes*, 570 N.W.2d 757, 760 (Iowa 1997)

(holding that isolated, minor incidents do not automatically establish a history of domestic abuse). We agree with the district court that Alicia's testimony was insufficient to establish a history of domestic violence.

Alicia also argues that she has more caregiving experience than Ben. She testified that prior to leaving Iowa, she was responsible for the majority of L.J.R.'s care. Even after Alicia left Iowa, she continued to participate in L.J.R.'s school conferences, activities, and visited L.J.R. frequently. Ben also has experience caring for L.J.R. Ben took over the primary caregiving activities after Alicia moved. He coaches L.J.R.'s soccer team, volunteers at the child's school, and teaches L.J.R. how to care for the cattle. Indeed, both parents have supported, cared, and loved L.J.R., even with their marital shortcomings.

L.J.R.'s teacher testified that L.J.R. is thriving in school. She stated that he is energetic, inquisitive, and enjoys learning. Furthermore, L.J.R. and his daytime caregiver have developed a lasting, healthy relationship. She has cared for him since he was born, and the parties describe her as a "grandparent." At Alicia's residence in Georgia, L.J.R. has no relationships with caregivers, no experience with the school system, and no friends. Awarding physical care to Alicia would disrupt the foundation of L.J.R.'s support structure, namely his school, friends, caregiver, and familiar environment. As a result, we hold that placing L.J.R. in Ben's physical care will provide L.J.R. with the stability and continuity vital to L.J.R.'s health and long-term maturity.

### B. Equitable Distribution: Settlement Proceeds

Ben cross-appeals the district court's decision to exclude Alicia's settlement from marital property subject to equitable distribution. Both parties agree the settlement should be included as a marital asset but dispute the distribution of the funds. Ben argues the settlement proceeds are not related to a personal-injury claim and should be treated as a severance package and divided amongst the parties. Alicia argues the settlement compensates her for a personal injury unrelated to Ben and she should retain the settlement in its entirety. We agree Alicia should retain the entire settlement.

In Iowa, we "divide the property of the parties at the time of divorce, except any property excluded from the divisible estate as separate property, in an equitable manner in light of the particular circumstances of the parties." *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005); see Iowa Code § 598.21(5). Separate property excluded from the estate includes "[p]roperty inherited by either party or gifts received by either party prior to or during the course of the marriage." Iowa Code § 598.21(6); *see also Schriner*, 695 N.W.2d at 496. Thus, we engage in a two-step process to distribute the estate equitably: first, we must determine the type of property subject to division; and second, we must divide the property in an equitable manner based on the statutory factors. *Schriner*, 695 N.W.2d at 499.

Under the first step, we rely on the statutory framework of the Iowa Code to determine the type of property subject to division. Settlement proceeds are not listed within the statutory exceptions to marital property. *See* Iowa Code § 598.21(6). As the *Schriner* court discussed:

> If our legislature had wanted to exclude [an asset class] from divisible property, we think it would have included the benefits in the list of exceptions along with inherited and gifted property. . . . Because the legislature expressly excluded two items of property from equitable distribution, we can infer that it intended all other property to be equitably distributed.

695 N.W.2d at 497–98 (citation omitted); *see also* Iowa Code § 598.21(6). Furthermore, the Iowa Supreme Court determined that proceeds of a personal-injury claim are marital assets. *In re Marriage of McNerney*, 417 N.W.2d 205, 206, 208 (Iowa 1987). Alicia's settlement proceeds were received on or around August 28, 2008, before the dissolution of marriage. Under the relevant statute, settlement proceeds are not excluded from the marital assets. Iowa Code § 598.21(5)-(6). We hold, and the parties concede, that the marital assets include the settlement proceeds.

Next, we are required to divide the property in an equitable manner based on the statutory factors. *See Schriner*, 695 N.W.2d at 496. "An equitable distribution does not mean an equal division." *Id.* at 499. The Iowa Supreme Court noted the importance of a flexible approach that allows the court to consider multiple factors and the specific circumstances of each case when executing an equitable distribution. *McNerney*, 417 N.W.2d at 206.

In *In re Marriage of Plasencia*, for example, the husband suffered a permanent disability and sought compensation through a personal injury claim. 541 N.W.2d 923, 926 (Iowa Ct. App. 1995). The district court awarded the non-injured spouse a portion of any disability recovery. *Id.* A panel of our court modified the decree excluding the non-injured spouse from recovering any portion of the husband's claim, holding, "[The husband's] claim is for injuries he

sustained and should be his claim." *Id.* On the other hand, in *McNerney*, both spouses were parties to a personal injury settlement. 417 N.W.2d at 208. While there was little evidence as to the exact allocation of damages to each party, the Iowa Supreme Court upheld the district court's decision to divide the proceeds between the parties as part of the equitable distribution because they were both involved in the dispute. *Id.*

With the above in mind, we believe *Plasensia* is more closely aligned with the facts of this case than *McNerney*. Like the *Plasensia* settlement, the current proceeds compensated Alicia for an individual, isolated injury that did not involve the other spouse. Furthermore, Alicia received the settlement from her New Jersey employer nearly two months after the divorce petition was filed, while she lived far removed from the family household. A portion of the funds were used to pay for joint credit cards, Ben's expenses, a trip for L.J.R., childcare expenses,[2] and expenses for the cattle operation—which was eventually assigned as an asset to Alicia in the decree. To the extent that Alicia used these funds to pay joint marital liabilities, it was to Ben's advantage. Accordingly, we hold that it is equitable to distribute the assets so that Alicia retains the remainder of the settlement proceeds. We modify the characterization of the property distribution to include the $195,000 net settlement payment as a marital asset, but we affirm its set-off to Alicia and the equalization payment of $53,368 from Ben to Alicia.

---

[2] Alicia testified that she paid Ben approximately $2000 per month prior to the temporary child support order.

### C. Attorney Fees

Both parties ask the court to award them appellate attorney fees. Appellate attorney fees are not a matter of right but rather rest in this court's discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). In determining whether to award attorney fees, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). Under these circumstances, we decline to award either party appellate attorney fees.

### IV. Conclusion

After a careful review of the record, we find it is in the best interest of L.J.R. to remain under Ben's physical care. Additionally, we include the settlement proceeds as a marital asset, but we affirm the distribution of assets so that Alicia retains the settlement in its entirety. As a result, we affirm the district court's equitable distribution so that the equalization payment remains unchanged; Ben shall pay Alicia an equalization payment of $53,368. We decline to award either party appellate attorney fees.

**AFFIRMED ON BOTH APPEALS**