# IN THE COURT OF APPEALS OF IOWA

No. 23-0177
Filed February 7, 2024

IN RE THE MARRIAGE OF DAN WILLIAM MERRY
AND JANET ANNE MERRY

Upon the Petition of
DAN WILLIAM MERRY,
        Petitioner-Appellee,

And Concerning
JANET ANNE MERRY, n/k/a JANET ANNE FIELDER,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


        The respondent appeals the dissolution decree that denied her request for

spousal support.  **AFFIRMED.**


        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

        Allison M. Steuterman, David E. Brick, and Thomas J. Levis of Brick Gentry,

P.C., West Des Moines, for appellee.


        Considered by Bower, C.J., and Schumacher and Langholz, JJ.

**SCHUMACHER, Judge.**

Janet Fielder, formerly known as Janet Merry, appeals the district court decision denying her request for spousal support from Dan Merry. She also seeks appellate attorney fees. Due to the amount of assets awarded to the parties and the fact that neither party is employed due to age, the court acted equitably in denying Janet's request for spousal support. We deny Janet's request for appellate attorney fees. We affirm the decision of the district court.

### I.      Background Facts & Proceedings

Janet and Dan were married in 1997.[1] Dan filed a petition for dissolution of marriage on March 29, 2021. On September 30, the court entered an order regarding temporary matters. Dan was ordered to pay Janet $6000 per month in temporary spousal support. The court also ordered as part of the temporary order that each party would receive $100,000 from a brokerage account.[2]

The dissolution trial was held on November 1 and 2, 2022. Dan owns Open Technologies, Inc., which sells computers and computer data storage systems. He earned between $250,000 and $750,000 per year from 1997 to 2013. Open Technologies largely ceased operations in 2013. Since then, Dan kept the company open primarily as a conduit for family health insurance. Dan was seventy-two years old at the time of the trial and is retired. He receives social

---

[1] This is the third marriage for Dan, the first for Janet. Of the parties' two children, one died in 2013. The other child is now an adult.

[2] The ruling on temporary matters was modified slightly following Janet's motion pursuant to Iowa Rule of Civil Procedure 1.904(2), as the court clarified its ruling concerning the parties' responsibilities for expenses for the marital residence.

security benefits of $32,208 per year and income from one annuity of $37,628 per year.[3] Janet asserts he will also receive $66,398 per year from another annuity.

At the time of the marriage, Janet worked as a pharmaceutical sales representative. In 2003, the parties agreed Janet would stay home with their children. Between 2006 and 2014, she earned $18,000 each year for planning and hosting social events for Open Technologies. She earned $15,000 for this work in 2015 and has had no income since then. Janet was fifty-nine years old at the time of the dissolution hearing.

In the dissolution decree, filed on December 6, the court divided the parties' property so each party received $6.08 million of assets. Janet received assets that included the marital residence, a farm, and her retirement accounts. Dan received his retirement accounts, an investment account, and an annuity. The court denied Janet's request for spousal support, noting neither party was likely to be employed in the future and they would be required to live off the property awarded by the court.

Janet filed a rule 1.904(2) motion, asking for certain adjustments to the property division and to be awarded spousal support. Dan filed his own rule 1.904(2) motion, asking for different adjustments to the property division. Each party resisted the other party's motion. The court made some adjustments to the division of property but denied the motion on the issue of spousal support. Janet appeals the issue of spousal support.

---

[3] Dan asserts the amount he receives from this annuity is $29,328 per year. Exhibit 84 shows Dan could withdraw $37,628 over the course of a year from this variable annuity.

## II.     Standard of Review

We review dissolution of marriage decrees in equity.  *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 50 (Iowa 1999).  In equitable actions, our review is de novo.  Iowa R. App. P. 6.907.  "In such cases, '[w]e examine the entire record and adjudicate anew rights on the issues properly presented.'" *Knickerbocker*, 601 N.W.2d at 50–51 (alteration in original) (citation omitted).  "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court, but is not bound by them."  Iowa R. App. P. 6.904(3)(g).

## III.     Spousal Support

Janet contends the district court should have awarded her spousal support of $7500 per month until the death of either party or her remarriage.  She asserts that she should have been awarded some spousal support, even if it was a reduced amount or over a shorter time period.

Janet states that she could be awarded traditional spousal support because the parties were married for twenty-five years at the time of the dissolution hearing and Dan's earning capacity was greater than her earning capacity.  She also claims that she could be awarded reimbursement spousal support because she left her career as a pharmaceutical sales representative to take care of the parties' children and promote Dan's career.  She notes that her social security benefits will be less than Dan's benefits because she was not able to contribute as much.

Janet contends that Dan has the ability to pay spousal support.  Dan will receive $32,208 per year in social security benefits and $37,628 per year from an annuity.  In the property division, Dan was awarded an account with a value of

$1,027,941, which gives him guaranteed lifetime income of $66,398 per year. In total, Dan will have income of $136,234 per year in retirement. Dan is eligible for Medicare.

Janet states that in contrast, she has no present source of income. At fifty-nine years of age, she is not yet eligible for social security benefits or Medicare. She asserts that when she does receive social security benefits, she anticipates receiving $24,780 per year, which is less than the $32,208 per year Dan is receiving.

Spousal support "is a stipend to a spouse in lieu of the other spouse's legal obligation for support." *In re Marriage of Erickson*, 553 N.W.2d 905, 907 (Iowa Ct. App. 1996). There is no absolute right to spousal support, "an award depends upon the circumstances of each particular case." *In re Marriage of O'Rourke*, 547 N.W.2d 864, 866 (Iowa Ct. App. 1996). "Our cases repeatedly state that whether to award spousal support lies in the discretion of the court, that we must decide each case based upon its own particular circumstances, and that precedent may be of little value in deciding each case." *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015). The court considers the factors in Iowa Code section 598.21A(1) (2021).[4] We will disturb the district court's award of spousal support "only when there has been a failure to do equity." *Id.* at 406 (citation omitted).

---

[4] The factors found in section 598.21A(1) are as follows:
a. The length of the marriage.
b. The age and physical and emotional health of the parties.
c. The distribution of property made pursuant to section 598.21.
d. The educational level of each party at the time of marriage and at the time the action is commenced.

Awards of spousal support may come within several categories: rehabilitative, reimbursement, traditional, transitional, or a hybrid of these types. *In re Marriage of Pazhoor*, 971 N.W.2d 530, 539–40 (Iowa 2022). Janet has asked for traditional and/or reimbursement spousal support.

> An award of *reimbursement alimony* is predicated upon economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other. *Traditional alimony* is payable for life or for so long as a dependent spouse is incapable of self-support. The amount of alimony awarded and its duration will differ according to the purpose it is designed to serve.

*O'Rourke*, 547 N.W.2d at 866–67 (quoting *In re Marriage of Francis*, 442 N.W.2d 59, 63–64 (Iowa 1989)).

"Property division and alimony should be considered together in evaluating their individual sufficiency." *In re Marriage of Trickey*, 589 N.W.2d 753, 756 (Iowa Ct. App. 1998). "They are neither made nor subject to evaluation in isolation from one another." *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997). "The question is whether the property division and alimony taken together

---

e. The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

f. The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

g. The tax consequences to each party.

h. Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

i. The provisions of an antenuptial agreement.

j. Other factors the court may determine to be relevant in an individual case.

are equitable to both parties." *In re Marriage of McNerney*, 417 N.W.2d 205, 209 (Iowa 1987).

In denying Janet's request for spousal support, the district court found:

If [Dan] were still actively employed with a going concern like Open Technologies, [Janet's] argument might have merit. However, it is clear that [Dan] is equally incapable of reentering the job market at the present time. He is appropriately considered to be retired and will be left to live off the considerable property award made by the court.
[Janet] is in no worse of a situation. She will come out of this marriage with just over $6 million in marital assets, including real estate and farm land that realistically will continue to appreciate in value. In addition, she is receiving all of her retirement accounts and a generous equalization payment from the marital investment account, all of which are available to her without penalty now that she has reached the age of 59 1/2 years. The amount of the property division to [Janet], along with the absence of any income source for [Dan] to access, convinces the court that, despite the lengthy marriage and [Janet's] lack of access to the job market, alimony is not appropriate under the circumstances of this case.

(Citation omitted).

As noted, Dan receives $32,208 per year in social security benefits, while Janet anticipates receiving $24,780 per year.[5] To put this another way, Dan receives $2684 per month, while Janet will receive $2065 per month. We do not find this to be a substantial difference between the parties' incomes when we additionally look at the property division. *See McNerney*, 417 N.W.2d at 209 (noting we consider "whether the property division and alimony taken together are equitable to both parties").

---

[5] Janet suggests that a recent case from our court supports an award of alimony, in spite of Dan's retirement. *See In re Marriage of Colby*, No. 22-0697, 2023 WL 5091835, at *3–4 (Iowa Ct. App. Aug. 9, 2023). However, absent from our previous case is the substantial property award received by each party in the instant case. *See id.*

Aside from social security benefits, both parties are living off of the assets awarded in the division of marital property. The annuity income Janet attributes to Dan comes from accounts awarded to him in the property division. Janet could receive the same income as Dan, or more, if she invested the assets awarded to her in accounts providing an income stream, such as an annuity. Furthermore, she will receive rental income from the farmland she received. And she has access to the investment accounts awarded to her, without penalty, given her age.

Based on the property division and the lack of employment income by either party, we conclude the district court's decision to deny Janet's request for spousal support is equitable. We affirm the district court's decision. *See Gust*, 858 N.W.2d. at 406 (finding a district court's award of spousal support should be disturbed "only when there has been a failure to do equity").

### IV.  Attorney Fees

Janet requests that Dan be ordered to pay her appellate attorney fees. She asserts that Dan is in a better financial position to pay attorney fees. She states that she must support herself, pay her trial attorney fees, and maintain the marital home.

"Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Stenzel*, 908 N.W.2d 524, 538 (Iowa Ct. App. 2018) (quoting *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006)). When considering whether to exercise our discretion, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (citation omitted).

Janet was awarded assets worth more than six million dollars, and the evidence does not show that she needs assistance in paying her appellate attorney fees. We deny Janet's request for an award of appellate attorney fees. Court costs, if any, associated with this appeal are assessed to Janet.

We affirm the decision of the district court.

**AFFIRMED.**